*In re* PAROLE OF GLOVER

Docket No. 189303. Submitted April 10, 1997, at Lansing. Decided December 12, 1997, at 9:00 A.M. Leave to appeal sought.

Mary Glover appealed by leave granted in the Ingham Circuit Court an August 1994 decision by the Parole Board to deny her parole from concurrent sentences of life imprisonment. The court, Thomas L. Brown, J., affirmed the decision of the Parole Board, determining that the appellant was not entitled to a written explanation by the Parole Board of the reason for denial of parole, that the increase from two years to five years in the interval between parole interviews of prisoners with parolable sentences of life imprisonment as provided in MCL 791.234(4)(a); MSA 28.2304 (4)(a), as amended by 1992 PA 181, now MCL 791.234(6)(a); MSA 28.2304(6)(a), and as applied to the appellant, did not violate the Ex Post Facto Clauses of the United States and Michigan Constitutions, and that the Parole Board did not violate the Open Meetings Act, MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, by making its decision in an informal, closed session. The appellant appealed by leave granted in the Court of Appeals.

The Court of Appeals *held*:

1. MCL 791.235(12); MSA 28.2305(12), which requires the Parole Board to provide a written explanation of the reason for a denial of parole, applies to prisoners serving indeterminate sentences and does not apply to a prisoner who, like the appellant, is serving a parolable sentence of life imprisonment.

2. Due process, as guaranteed by US Const, Am XIV and Const 1963, art 1, § 17, entitles a prisoner who is serving a parolable sentence of life imprisonment and is denied parole to a written explanation by the Parole Board of the reason for denial of parole. Such a prisoner has a protectible liberty interest in attaining release on parole. A balancing of that interest, the risk of erroneous deprivation of that interest through the procedures used, and the government's interests, including the function at issue and the increased fiscal and administrative burdens caused by requiring such a written explanation, leads to the conclusion that considerations of fairness and due process require a written explanation by the Parole Board of a denial of parole to a prisoner serving a parolable sen-

tence of life imprisonment. The matter must be remanded to the Parole Board for a written explanation of the denial of parole to the appellant. The Court of Appeals retains jurisdiction and holds in abeyance consideration of whether denial of parole constitutes an abuse of discretion by the Parole Board.

3. The decrease in the frequency of Parole Board interviews of prisoners serving parolable sentences of life imprisonment effected by 1992 PA 181 represented a procedural, not a substantive, change with respect to the appellant's rights and does not violate the Ex Post Facto Clauses of the federal and state constitutions, US Const, art I, § 10; Const 1963, art 1, § 10.

4. The Open Meetings Act applies to the Parole Board and was violated in this case when the Parole Board denied parole to the appellant without the public notice and open meeting required by the act. A clear legislative intent to exempt the Parole Board from the requirements of the Open Meetings Act cannot be discerned from the amendment of MCL 791.202(2); MSA 28.2272(2) by 1987 PA 79, which deleted language that had required the Parole Board to comply with the Open Meetings Act. Any impairment of the rights of the public resulting from the failure of the Parole Board to comply with the Open Meetings Act will be remedied by furnishing the appellant a written explanation of the denial of parole to the appellant. Accordingly, the Parole Board need not reconsider its decision in a formal, public meeting.

Reversed and remanded.

GAGE, J., concurring in part and dissenting in part, stated that the possibility of parole is not an interest subject to due process protection and that the Parole Board is not subject to the requirements of the Open Meetings Act. The possibility of parole is no more than a mere hope and cannot be protected by due process, and the Legislature manifested its intent to exempt the Parole Board from the Open Meetings Act when it enacted 1987 PA 79. The decision of the circuit court should be affirmed.

1. SENTENCES — PAROLE — LIFE IMPRISONMENT — DENIALS OF PAROLE — WRITTEN EXPLANATIONS OF PAROLE BOARD.

Due process, as guaranteed by the federal and state constitutions, entitles a prisoner who is serving a parolable sentence of life imprisonment and is denied parole to a written explanation by the Parole Board of the reason for denial of parole (US Const, Am XIV; Const 1963, art 1, § 17).

2. CONSTITUTIONAL LAW — EX POST FACTO LAWS.

A statute that affects the prosecution or disposition of criminal cases involving crimes committed before the effective date of the statute

violates the Ex Post Facto Clauses of the federal and state constitutions if it makes punishable that which was not, makes an act a more serious criminal offense, increases the punishment, or allows the prosecution to convict on less evidence (US Const, art I, § 10; Const 1963, art 1, § 10).

3. STATUTES — OPEN MEETINGS ACT — PAROLE BOARD.

    The public meeting and notice requirements of the Open Meetings Act apply to the Parole Board and its decisions to grant or deny parole (MCL 15.261 *et seq.*; MSA 4.1800[11] *et seq.*).

*Neal Bush* and *John F. Royal,* for Mary Glover.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Chester S. Sugierski, Jr.,* Assistant Attorney General, for the Parole Board.

Amici Curiae:

*Jeanice Dagher-Margosian,* for American Civil Liberties Union Fund of Michigan and Criminal Defense Attorneys of Michigan.

Before: MICHAEL J. KELLY, P.J., and WAHLS and GAGE, JJ.

MICHAEL J. KELLY, P.J. Mary Glover appeals by leave granted pursuant to MCR 7.205(D) an Ingham Circuit Court order affirming the Parole Board's denial of parole from her sentences of life imprisonment. We reverse the circuit court's decision, and remand for further proceedings.

Appellant is serving three concurrent terms of life imprisonment for her plea-based convictions of one count of second-degree murder and two counts of assault with intent to commit murder. In 1994, the Parole Board held a public hearing as required by MCL 791.234(6)(b); MSA 28.2304(6)(b) to determine whether to parole appellant. Appellant's case might be described as a cause celebre. Her many supporters

submitted letters and gave testimony at the public
hearing urging the Parole Board to grant parole. Their
testimony established that appellant has put her tal-
ents and industry to extensive use while in prison.
Appellant earned college degrees with high honors
and received a prestigious literary award. She was
active in social and religious programs for prisoners,
and involved herself in a ground-breaking federal law-
suit that has enhanced opportunities for the female
inmates of this state.[1] However, relatives and friends
of the victims, as well as community members,
opposed parole for various reasons, not the least
being the tragic loss they had experienced as a result
of appellant's acts.

In August 1994, the Parole Board denied parole to
appellant with this statement:

> After full consideration of the positions taken by those
> testifying at the public hearing and consideration of the
> adjustment, attitude and behavior of the prisoner, the
> Parole Board withdraws interest in proceeding toward
> parole at this time. You will next be interviewed by the
> Parole Board five years from your most recent interview as
> indicated in the official date above.

On appeal, the circuit court denied appellant's
motion for reversal and affirmed the decision of the
Parole Board. The circuit court held that appellant
was not entitled to a detailed written statement of the
Parole Board's reason for denying parole. The circuit
court also determined that the statutory amendment
increasing the interval between parole interviews for
prisoners sentenced to parolable life terms did not

---

[1] *Glover v Johnson*, 721 F Supp 808 (ED Mich, 1989), aff'd in
pertinent part 934 F2d 703 (CA 6, 1991).

violate the Ex Post Facto Clauses of the state and federal constitutions. Also, the circuit court concluded that the Parole Board did not violate the Open Meetings Act, MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, by making its parole decision in an informal, closed session.

I

On appeal, appellant first contends that the Parole Board was required to make sufficiently detailed findings of fact and conclusions to enable the reviewing court to engage in an adequate, meaningful review of the Parole Board's decision to deny parole. We agree.

MCL 791.234(6); MSA 28.2304(6), the so-called "lifer law," governs parole determinations for prisoners serving parolable life terms and provides, as pertinent:

> (6) A prisoner under sentence for life . . . other than a prisoner sentenced for life for murder in the first degree . . . who has served 10 calendar years of the sentence in the case of a prisoner sentenced for a crime committed before October 1, 1992 . . . is subject to the jurisdiction of the parole board and may be released on parole by the parole board, subject to the following conditions:
>
> (a) One member of the parole board shall interview the prisoner at the conclusion of 10 calendar years of the sentence and every 5 years thereafter until such time as the prisoner is paroled, discharged, or deceased. The interview schedule prescribed in this subdivision applies to all prisoners to whom this subsection is applicable, whether sentenced before, on, or after the effective date of the 1992 amendatory act that amended this subdivision.
>
> (b) A parole shall not be granted a prisoner so sentenced until after a public hearing held in the manner prescribed for pardons and commutations in [MCL 791.244(2)(f); MSA 28.2314(2)(f) to MCL 791.244(2)(h); MSA 28.2314(2)(h)

and MCL 791.245; MSA 28.2315]. Notice of the public hearing shall be given to the sentencing judge, or the judge's successor in office, and parole shall not be granted if the sentencing judge, or the judge's successor in office, files written objections to the granting of the parole within 30 days of the receipt of the notice of hearing. The written objections shall be made part of the prisoner's file.

In turn, the prisoner, the prosecutor of the county from which the prisoner was committed, or a victim may appeal by leave to the circuit court of the county from which the prisoner was committed the Parole Board's decision to grant or deny parole. MCL 791.234(7); MSA 28.2304(7). The Parole Board's decision regarding parole is reviewed for an abuse of discretion. MCR 7.104(D)(5)(b); MCL 791.234(7); MSA 28.2304(7); *In re Parole of Johnson*, 219 Mich App 595, 597-598; 556 NW2d 899 (1996). Generally, an abuse of discretion is found where an unprejudiced person, considering the facts upon which the decision maker acted, would say there was no justification or excuse for the decision made. See *People v Lugo*, 214 Mich App 699, 709; 542 NW2d 921 (1995). This determination is to be made in light of the record and the statutory requirements limiting the Parole Board's decision. *Johnson, supra* at 598; *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 153; 532 NW2d 899 (1995).

The pivotal question is whether the Parole Board should be required to give some sort of written, particularized explanation of its decision to deny parole to a prisoner with a parolable life sentence, something which the board contends it does not have to do. MCL 791.234(7); MSA 28.2304(7) explicitly provides for circuit court review of the Parole Board's

decisions concerning such prisoners, but does not indicate how the reviewing court is to evaluate the record upon which the Parole Board acted. Elsewhere, however, MCL 791.235(12); MSA 28.2305(12) requires the board to provide a prisoner with a "written explanation of the reason for denial [of parole] and, if appropriate, specific recommendations for corrective action the prisoner may take to facilitate release." As a rule of statutory construction, statutes relating to the same subject or sharing a common purpose are in pari materia and must be read together as one, even if they contain no reference to one another and were enacted on different dates. *State Treasurer v Schuster*, 215 Mich App 347, 352; 547 NW2d 332 (1996). The object of the "in pari materia" rule is to give effect to the purpose of the Legislature as derived from the harmonious statutes on a subject. *Jennings v Southwood*, 446 Mich 125, 137; 521 NW2d 230 (1994). If the two statutes lend themselves to a construction avoiding conflict, that construction should control. *State Treasurer, supra.*

Both MCL 791.234; MSA 28.2304 and MCL 791.235; MSA 28.2305 pertain to parole. However, because MCL 791.235; MSA 28.2305 concerns prisoners who become eligible for parole after serving the minimum term of an indeterminate prison sentence, it is obvious that the Legislature has created different processes for prisoners serving parolable life sentences and those serving indeterminate sentences. The "written explanation" requirement of MCL 791.235(12); MSA 28.2305(12) is part of the parole process for prisoners who are not serving life sentences. The express mention in a statute of one thing implies the exclusion of other similar things.

*Gracey v Wayne Co Clerk*, 213 Mich App 412, 420; 540 NW2d 710 (1995). Mindful of these considerations, we cannot say that these two statutes are in pari materia and must be read together as one in view of the distinction between the classes of persons to whom each applies. Therefore, we reject appellant's argument that she is entitled to a written explanation of the Parole Board's decision by virtue of MCL 791.235(12); MSA 28.2305(12).

While appellant may not be statutorily entitled to a written explanation of the Parole Board's decision to deny her parole, she is entitled to protection under the Due Process Clause of the United States Constitution, which "applies when government action deprives a person of liberty or property." See US Const, Am XIV; *Greenholtz v Inmates of the Nebraska Penal & Correctional Complex*, 442 US 1; 99 S Ct 2100; 60 L Ed 2d 668 (1979). Appellant is also entitled to protection under the Due Process Clause of the Michigan Constitution, Const 1963, art 1, § 17, which provides that "[n]o person shall be . . . deprived of life, liberty or property, without due process of law." *Johnson v Wayne Co*, 213 Mich App 143, 155; 540 NW2d 66 (1995) (JANSEN, J.). To determine the applicability of the Due Process Clause to the instant situation, we must first determine whether appellant has a protectible liberty interest in attaining her conditional release on parole. *Greenholtz, supra* at 7. Next, to determine whether appellant is entitled to a written explanation from the Parole Board regarding its parole decision as a due process protection, we must consider and balance three factors: (1) the private interests affected by the governmental action, (2) the risk of erroneous deprivation of the private interest

through the procedures used, and (3) the government's interest, including the function at issue and the increased fiscal and administrative burdens caused by imposition of the additional procedural requirement. *Lassiter v Dep't of Social Services*, 452 US 18, 27; 101 S Ct 2153; 68 L Ed 2d 640 (1981);  *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976);  *People v Sierb*, 219 Mich App 127, 134; 555 NW2d 728 (1996). We find that considerations of fairness and due process entitle appellant to a written explanation by the Parole Board of its decision to deny her parole.

With respect to the first part of our inquiry, we find that appellant has a protectible liberty interest in attaining her release on parole. "[T]o obtain a protectible right 'a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it.' " *Greenholtz, supra* at 7 (quoting *Bd of Regents v Roth*, 408 US 564, 570-571; 92 S Ct 2701; 33 L Ed 2d 548 [1972]). In *Greenholtz, supra* at 15, a case in which the plaintiff inmates argued, much like appellant here, that due process required the Nebraska Parole Board "to specify the particular 'evidence' in the inmate's file or at his interview upon which rests the discretionary determination that an inmate is not ready for conditional release," a majority of justices rejected the argument that the plaintiffs did not have a legitimate claim of entitlement to attaining their release on parole on the basis that Nebraska had provided for the possibility of parole by enacting a comprehensive statutory parole scheme. *Id.* at 11. The majority stated:

> That the state holds out the *possibility* of parole provides
> no more than a mere hope that the benefit will be obtained.
> To that extent the general interests asserted here is no
> more substantial than the inmate's hope that he will not be
> transferred to a another prison, a hope which is not pro-
> tected by due process. [*Id.* (emphasis in original; citations
> omitted).]

Thus, the majority in *Greenholtz* distinguished between parole release, which remained an amorphous hope to even eligible prisoners, and parole revocation, regarding which the Supreme Court had previously determined that offenders who had gained their freedom from incarceration by conditional parole release had a liberty interest in continued freedom, which could not be terminated without adequate due process protection. See *Morrissey v Brewer*, 408 US 471, 480-484; 92 S Ct 2593; 33 L Ed 2d 484 (1972). The *Greenholtz* majority went on to find, however, that a unique provision of Nebraska law—which provided that "[w]henever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release" unless the Board of Parole determined that any one of four reasons for deferring parole was present in the particular case—created a sufficiently definite expectation of release for parole-eligible prisoners that was entitled to constitutional protection. *Id.* at 11.

Here, unlike Nebraska law, Michigan law contains no analogous provision that effectively guarantees parole to eligible prisoners absent certain negative factors. Pursuant to a carefully written statutory scheme, parole in Michigan is, and has always been, a highly discretionary matter for the Parole Board's

determination. Indeed, the Legislature recognized the potential problems inherent in such a discretionary statutory scheme by allowing for the creation of parole guidelines to "govern the exercise of the parole board's discretion . . . as to the release of prisoners on parole." See MCL 791.233e(1);    MSA 28.2303(6)(1); *In re Parole of Johnson, supra* at 598-599. However, even with the enactment of the guidelines, which attempted to impart some objective standards to the Parole Board's parole determinations, *id.* at 599, the Parole Board still "may depart from the parole guideline [sic] by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines." MCL 791.233e(1); MSA 28.2303(6)(1).   It is quite clear that appellant is entitled to scant procedural protection under the existing statutory parole scheme, especially because she is a parolable lifer.

Although rejected by a majority of justices, and further disparaged by a panel of this Court in *People v Malmquist*, 155 Mich App 521, 524-525; 400 NW2d 317 (1986),   we hereby adopt the reasoning and conclusion of the minority of justices in *Greenholtz*, led by Justice Marshall, that

> [i]t is self-evident that all individuals possess a liberty interest in being free from physical restraint. Upon conviction for a crime, of course, an individual may be deprived of this liberty to the extent authorized by penal statutes. But when a State enacts a parole system, and creates the possibility of release from incarceration upon satisfaction of certain conditions, it necessarily qualifies that initial deprivation. In my judgment, it is the existence of this system which allows prison inmates to retain their protected interest in securing

freedoms available outside prison. Because parole release
proceedings clearly implicate this retained liberty interest,
the Fourteenth Amendment requires that due process be
observed, irrespective of the specific provisions in the
applicable parole statute. [444 US 23 (Marshall, J.,
dissenting).[2]]

We adopt this conclusion for several reasons. First,
like the *Greenholtz* minority, we believe that the dif-
ference between a deprivation of a liberty interest
presently enjoyed and a denial of a desired liberty
interest is not constitutionally significant:

Whether an individual currently enjoys a particular free-
dom has no bearing on whether he possesses a protected
interest in securing and maintaining that liberty. The Court
acknowledged as much in *Wolff v McDonnell* [418 US 539,
557-558; 94 S Ct 2963; 41 L Ed 2d 935 (1974)], when it held
that the loss of good-time credits implicates a liberty inter-
est even though the forfeiture only deprived the prisoner of
freedom he expected to obtain sometime hence. [442 US
26.]

Further, we see no principled basis upon which to
distinguish between the two allegedly different inter-
ests because (1) the potential results of the parole
revocation process and the parole release process are

---

[2]  See also Justice Powell's concurring opinion in *Greenholtz*,
*supra:*

[W]hen a State adopts a parole system that applies general stan-
dards of eligibility, prisoners justifiably expect that parole will be
granted fairly and according to law whenever those standards are
met. This is so whether the governing statute states, as here, that
parole "shall" be granted unless certain conditions exist, or pro-
vides some other standard for making the parole decision. Contrary
to the [majority's] conclusion . . . I am convinced that the presence
of a parole system is sufficient to create a liberty interest, pro-
tected by the Constitution, in the parole-release decision. [442 US
19 (citation omitted).]

largely the same, i.e., conditional freedom or incarceration; and (2) although the *Greenholtz* majority distinguished between the relative levels of discretion exercised by the Parole Board in determining whether to revoke parole, a decision that necessarily involves an essentially fact-based, post hoc analysis, or to grant parole, which involves an essentially predictive, subjective analysis, there is no relationship between the nature of the interest involved and the nature of the decisional process used to terminate the interest. 444 US 27-28. Lastly, and perhaps most significantly, the holding of the *Greenholtz* majority effectively ignored the reality that the success of the modern penal system greatly depends on the availability of parole for most prisoners serving time for parolable offenses. *Id.* at 29-31. "Hence, . . . it is unrealistic . . . to speculate that the existence of a parole system provides prisoners 'no more than a mere hope' of release." *Id.* at 31. Accordingly, we find that appellant has a protected liberty interest in gaining early release on parole.

Having reached this determination, we must consider whether due process protections require the Parole Board to provide appellant, and other parolable lifers, with a written explanation of the reasons for the denial of parole. First, the balancing test requires us to evaluate the private interest at stake in the Parole Board's determination. *Lassiter, supra* at 27. To characterize appellant's interest in parole as anything less than of the greatest importance would be improvident.

Second, we must evaluate the risk of erroneous deprivation of appellant's interest through the procedures used. *Id.* Under the circumstances present in

the parole process used for parolable lifers, we find the risk of erroneous deprivation to be grave indeed. Procedurally, once the Parole Board has decided to hold a public hearing regarding the issue of parole, the board has already decided, on the basis of a review of the prisoner's file and an interview with the inmate, that parole should be recommended. MCL 791.234(6)(b); MSA 28.2304(6)(b); *Middleton v Parole Bd (On Remand)*, 208 Mich App 563, 567; 528 NW2d 791 (1995). In the instant case—where the Parole Board had already decided on the basis of objective standards that appellant was a good parole candidate, a contentious public hearing was held, after which the board reversed its assessment of appellant's parole prospects with no explanation—the potential for error is evident. Additionally, the fact that the public hearing is conducted pursuant to relaxed evidentiary rules, MCL 791.244(2)(h); MSA 28.2314(2)(h), increases the risk that the parole decision will be influenced by unreliable evidence. Moreover, by granting parolable lifers, victims, and prosecutors the right to appeal the decisions of the Parole Board, the Legislature obviously recognized the potential for error in the process and sought to protect against it.

By requiring the Parole Board to state in writing its reasons for denying parole,[3] the risk of erroneous

---

[3] In the face of a mountain of information concerning appellant's correctional history, the Parole Board here abjured any meaningful explanation. It indicated that it considered all the information before it and decided to "withdraw" interest in or consideration of parole. In other words, thumbs down. The Attorney General suggested during oral argument before this panel that we should undertake the review process that led the Parole Board to its decision by examining all the exhibits, reading all the testimony, briefs, and records and deciding on that basis whether the board had abused its discretion. That is not a review; it invites instead

deprivation of the parolable lifer's interest in obtaining parole will be reduced. Requiring such an explanation will encourage adherence to the parole guidelines and the standard of objectivity embodied therein. It will guarantee that the parole decision is made on the basis of competent, reliable information. Most importantly, requiring a statement of reasons will greatly facilitate proper review of the board's decision and guarantee that the parole process is conducted with fairness and consistency. This Court has neither the expertise nor the resources to conduct review de novo of the reams of documentation generated pursuant to the parole process set forth in MCL 791.234(6); MSA 28.2304(6). Once the Parole Board does its job with appropriate explication, meaningful review can follow.

Finally, we are required to evaluate the government's interests, including the function at issue and the increased fiscal and administrative burden caused by the imposition of an additional requirement. *Lassiter, supra* at 27. It is in the government's interest to require the Parole Board to provide a written explanation of its parole decision to parolable lifers who are denied parole. This conclusion necessarily follows from our determinations that the written-explanation requirement will enhance the Parole Board's ability to arrive at parole determinations that are in the public's best interest, and that such a

---

a post facto justification of a decision that we are unqualified to make at the outset. The Parole Board did indicate a "reason code of 92," which refers to the "lifer law interview." We take that to mean that the Parole Board considered its job to conduct an interview of the appellant because it had to, declined to grant parole, and gave no reasons because it need not. We do not think that passes federal or state due process constitutional muster.

requirement will greatly aid the courts in reviewing the Parole Board's decisions. Further, the administrative burden and expense presented by a written-explanation requirement are not great. The Parole Board must already provide a written explanation for its denial of parole to a vast majority of prisoners who are denied early release, and imposing this requirement for the very few parolable lifers who will ever get past the initial-interview stage will not substantially burden the public fisc. This procedural protection merely requires the board to distill and record reasons supporting a decision that it has already fully evaluated and discussed, by no means a daunting task.

Accordingly, we conclude that, consistent with due process considerations, the Parole Board is required to provide parolable lifers who are denied parole a written explanation of the reasons for its decision. Simply stating that appellant's "adjustment, attitude and behavior" militate in favor of a withdrawal of interest in parole is not sufficient to allow for meaningful appellate review of the Parole Board's decision. Until some explanation is available, we are unable to address appellant's second issue on appeal, i.e., whether the decision to deny her parole constituted an abuse of the Parole Board's discretion. Accordingly, we remand this matter to the Parole Board for an explanation of its decision to deny appellant parole. We retain jurisdiction and hold in abeyance consideration of the merits pending review of the board's explanation.

II

Next, appellant contends that a statutory amendment increasing the interval between parole interviews for prisoners serving parolable life sentences, 1992 PA 181, MCL 791.234(4)(a); MSA 28.2304(4)(a), now MCL 791.234(6)(a); MSA 28.2304(6)(a), violated the Ex Post Facto Clauses of the federal and state constitutions. US Const, art I, § 10; Const 1963, art 1, § 10. We do not agree.

A statute that affects the prosecution or disposition of criminal cases involving crimes committed before the effective date of the statute violates the Ex Post Facto Clauses if it (1) makes punishable that which was not, (2) makes an act a more serious criminal offense, (3) increases the punishment, or (4) allows the prosecution to convict on less evidence. *Riley v Parole Bd*, 216 Mich App 242, 244; 548 NW2d 686 (1996). Constitutional issues are issues of law that we review de novo on appeal. *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997).

A panel of this Court considered a related issue in *Riley, supra* at 244-245. There, as here, the plaintiff had been convicted and sentenced to parolable life imprisonment before 1992, when the "lifer law" stated, as relevant:

> (4) A prisoner under sentence for life . . . who has served 10 calendar years of the sentence is subject to the jurisdiction of the parole board and may be released on parole by the parole board, subject to the following conditions:
>
> (a) One member of the parole board shall interview the prisoner at the conclusion of 4 calendar years of the sentence and biennially thereafter. [MCL 791.234(4); MSA 28.2304(4).]

In 1992, the Legislature amended subsection 4(a), which became subsection 6(a), to state that lifers convicted before October 1, 1992, would still come under the Parole Board's jurisdiction after serving ten calendar years of their sentence, but provided that a Parole Board member shall interview the prisoner at the conclusion of ten calendar years of the sentence and every five years thereafter, thus changing the timing of the Parole Board's initial interview. *Riley, supra* at 245. In holding that this change in timing was not ex post facto, the *Riley* panel stated:

> Although the amended statute changes the timing of parole hearings, plaintiff's eligibility for parole is unaffected by the challenged statute. Because the timing of the first hearing does not affect plaintiff's substantive rights, we find that the amended version of the "lifer[] law" that addresses eligibility for parole does not violate the Ex Post Facto Clauses of the Michigan and United States Constitutions. [*Id.* at 245-246.]

Although appellant has framed her issue as whether the decrease in frequency of Parole Board interviews from biennially to every five years violates the Ex Post Facto Clauses of the state and federal constitutions, and not whether the change in timing of the first interview is unconstitutional, the *Riley* panel's reasoning is equally applicable here. As the *Riley* panel stated, the Ex Post Facto Clauses were not intended to limit legislative control of remedies and procedures that have no substantive effect; rather, they were intended to secure substantial personal rights against arbitrary and oppressive legislation. *Id.* at 244. Hence, mere procedural changes, though disadvantageous, are not ex post facto. *People v Russo,* 439 Mich 584, 592-593; 487 NW2d 698 (1992); *Riley,*

*supra.* Despite the 1992 amendment of MCL 791.234(6); MSA 28.2304(6) that merely changed the procedure by which the Parole Board conducts successive interviews, appellant, as before 1992, remained eligible for parole after serving ten years of her parolable life term. Because the legislative change was merely procedural and did not affect appellant's substantive rights, it was not ex post facto.

III

Lastly, appellant contends that the Parole Board violated the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, by making its final decision to deny her parole without public notice of the proceedings and in a closed, informal voting procedure. We agree.

The OMA provides, "All decisions of a public body shall be made at a meeting open to the public." MCL 15.263(2); MSA 4.1800(13)(2); *Moore v Fennville Bd of Ed*, 223 Mich App 196, 200; 566 NW2d 31 (1979), lv pending. The purpose of the OMA is to provide the public with a fuller disclosure of the acts of government officials. In light of this purpose, we broadly interpret the provisions of the OMA and strictly construe its exemptions. *Federated Publications, Inc v Michigan State Univ Bd of Trustees*, 221 Mich App 103, 112, 116; 561 NW2d 433 (1997).

The OMA defines a "public body" as

> any state or local legislative or governing body, *including a board*, commission, committee, subcommittee, authority, or council, which is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function, or a lessee thereof performing an essential public purpose and function pursuant to the lease

agreement. [MCL 15.262(a); MSA 4.1800(12)(a) (emphasis added).]

MCL 15.262(d); MSA 4.1800(12)(d) defines "decision" as

a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy.

Where the language of a statute is clear and unambiguous, judicial construction is generally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). By its clear and unambiguous terms, the OMA applies to the decisions of the Parole Board, a "public body" for the purposes of the OMA, to grant or deny parole.

Appellee argues, however, that the Legislature manifested its intent to exempt the Parole Board from the requirements of the OMA by amending MCL 791.202(2); MSA 28.2272(2). Before amendment in 1987, MCL 791.202(2); MSA 28.2272(2) stated:

The business which the [Michigan Corrections Commission] or the parole board may perform shall be conducted at a public meeting held in compliance with [the OMA]. Public notice of the time, date, and place of the meeting shall be given in the manner required by [the OMA].

In 1987, the Legislature amended MCL 791.202(2); MSA 28.2272(2), deleting its language concerning the Parole Board. 1987 PA 79.

We disagree with appellee's contention that the amendment of MCL 791.202(2); MSA 28.2272(2) effectively exempted the Parole Board from the

requirements of the OMA. Although the Legislature amended MCL 791.202(2); MSA 28.2272(2), it did not enact changes to the OMA that we might interpret as exempting the Parole Board from its requirements. Legislative intent is the lodestar of statutory interpretation. *People v Adair*, 452 Mich 473, 479; 550 NW2d 505 (1996). We presume that the Legislature had knowledge of existing laws regarding a subject when it enacted or amended a law. *Stevens v Inland Waters, Inc*, 220 Mich App 212, 219; 559 NW2d 61 (1996). Thus, the Legislature was aware that, by its clear terms, the OMA applied to the Parole Board and its parole decisions, and knew that the OMA did not explicitly exclude the Parole Board from its purview. See MCL 15.263(7)-(11); MSA 4.1800(13)(7)-(11). Moreover, the Legislature is presumed to have been aware of this Court's broad application of the OMA and strict construction of its exemptions when it amended MCL 791.202(2); MSA 28.2272(2) to merely exclude language concerning the Parole Board. *Glancy v Roseville*, 216 Mich App 390, 394; 549 NW2d 78 (1996). In light of these considerations, we are unable to discern a clear legislative intent to exempt the Parole Board and its decisions from the public meeting and notice requirements of the OMA from the Legislature's mere amendment of MCL 791.202(2); MSA 28.2272(2). Accordingly, we conclude that the Parole Board violated the OMA when it made its parole decision in a closed meeting without providing the public with notice of its action.

A party seeking an invalidation of a decision by a public body in violation of the OMA must allege a violation of the act and that this violation impaired the rights of the public. *Wilkins v Gagliardi*, 219 Mich

App 260, 275; 556 NW2d 171 (1996). The mere recital of language alleging a violation of public rights is not sufficient. Rather, the plaintiff must present factual allegations to support the conclusion that the rights of the public were impaired by the failure to hold a public meeting in compliance with the OMA. *Id.*

Here, appellant does not request that we invalidate the decision of the Parole Board to deny her parole. Rather, she asks us to remand this matter to the Parole Board so that it may conduct a formal, public meeting regarding its decision to deny her parole. While we agree that remand is necessary so that the Parole Board may supply appellant with a written explanation of its reasons for denying parole in accordance with MCL 791.235(12); MSA 28.2305(12), we refrain from directing the board to reconsider its parole decision in a formal, public meeting. The Parole Board reached a decision on appellant's parole, and did so with the benefit of copious public testimony both for and against appellant's release. By supplying appellant with a written document meaningfully detailing its findings and conclusions regarding its decision to deny parole, the Parole Board will have remedied any impairment of public rights resulting from its failure to make its final parole decision in compliance with the OMA. While the Parole Board has committed a violation of the OMA, it will have served the purpose of the act by fully disclosing the reasoning behind its decision to deny parole to appellant. See *Federated Publications, supra*; see also *Wilkins, supra*.

The decision of the circuit court is reversed and this matter is remanded for action by the Parole

Board as consistent with this opinion. We retain jurisdiction.

WAHLS, J., concurred.

GAGE, J. (*concurring in part and dissenting in part*). I respectfully but firmly dissent to parts I and III of the majority opinion. I concur in part II.

As the majority notes, appellant is serving three concurrent terms of life imprisonment for her convictions of one count of second-degree murder and two counts of assault with intent to commit murder. Not evident from the majority opinion is the fact that appellant acted as a principal in the offenses by entering the crime scene alone and stealing money from the cash register. Moreover, she hid the murder weapon on the premises and later retrieved it from its hiding place. Three people were shot in the incident, and two died.

I also note, only because the majority fails to mention it, that appellant has also been found guilty of some misconduct violations while imprisoned, apparently for being "[o]ut of place." In addition, she received two sexual misconduct determinations, although appellant apparently denied these charges.

I

Agreeing that appellant is overall a sympathetic and unusual parole candidate, I must nonetheless write that I adamantly disagree with part I of the majority opinion. The majority first finds, I believe correctly, that the applicable statutory scheme does not entitle appellant to a written explanation of the Parole Board's decision to deny her parole. However, somewhat inexplicably, the majority then adopts a dissent

from a 1979 United States Supreme Court case to justify its conclusion that appellant has a protectible liberty interest in attaining her conditional release on parole, this protectible interest gives rise to due process entitlements, and the Parole Board therefore abused its discretion in not providing appellant with a more detailed written explanation for denying her parole. Adding to what I believe is the incredibleness of the majority's conclusion is the fact that the issue whether appellant was denied due process under either the federal constitution or the state constitution was not decided by the circuit court that affirmed the Parole Board's decision, and whose opinion we now review, because appellant did not raise the issue before them. Nor does she raise the due process issue before this Court. Rather, the question whether appellant has been denied due process is confined entirely to an amicus brief filed with this Court.

Having chosen to decide this issue in appellant's favor utilizing a due process analysis, the majority must find that appellant has a protectible liberty interest in attaining her release on parole. As the majority notes, "[T]o obtain a protectible right 'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Greenholtz v Inmates of the Nebraska Penal & Correctional Complex*, 442 US 1, 7; 99 S Ct 2100; 60 L Ed 2d 668 (1979) (quoting *Bd of Regents v Roth*, 408 US 564, 570-571; 92 S Ct 2701; 33 L Ed 2d 548 [1972]). In *Greenholtz*, a majority of the Supreme Court justices concluded, "That the state holds out the *possibility* of parole provides no more

than a mere hope that the benefit will be obtained,
. . . a hope which is not protected by due process."
*Id.* at 11 (emphasis in original). At least one published opinion of this Court has recognized the viewpoint expressed by the *Greenholtz* majority. See *People v Malmquist*, 155 Mich App 521, 524; 400 NW2d 317 (1986).

Notwithstanding the unambiguous holding from the United States Supreme Court and its recognition by a prior panel of this Court, the majority adopts the conclusion of a minority of justices in *Greenholtz* that if a state has enacted a parole system, prison inmates retain a protected interest in securing their freedom through utilizing the system, and therefore due process must be observed during parole release proceedings. *Greenholtz, supra* at 23 (Marshall, J., dissenting).

I simply cannot agree with this adoption. Although I recognize that the *Malmquist* opinion is not binding on this panel, it is still good law, and I would follow its holding as well as the reasoning and conclusion of the majority of the justices in *Greenholtz, supra,* who held that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Id.* at 7.

II

I concur in the reasoning and conclusion of part II of the majority opinion.

III

The majority also finds that the Parole Board violated the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, by making its final deci-

sion to deny appellant parole without public notice of the proceedings and in a closed, informal voting procedure. The majority finds that by clear and unambiguous terms, the OMA applies to the decisions of the Parole Board to grant or deny parole. I disagree. The Legislature manifested its intent to exempt the board from OMA requirements by amending MCL 791.202(2); MSA 28.2272(2) in 1987 and deleting all language concerning the Parole Board. 1987 PA 79. Moreover, a prisoner serving a life sentence has no right to a public hearing absent the Parole Board's decision to hold one. *Middleton v Parole Bd (On Remand)*, 208 Mich App 563, 568; 528 NW2d 791 (1995).

In conclusion, I do not believe that appellant has demonstrated either a statutory mandate or a protectible interest covered by due process guarantees that entitles her to a more detailed explanation of the reasons behind the Parole Board's denial of parole. Nor do I believe that the Parole Board's decision violated the OMA. I would affirm the circuit court order, which denies appellant's motion to reverse the Parole Board's decision.