*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MONTEZ STOVALL,

Defendant-Appellant.

FOR PUBLICATION
November 5, 2020
9:05 a.m.

No. 342440
Wayne Circuit Court
LC No. 92-000334-01-FC

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

SAWYER, J.

This case is before us on remand from our Supreme Court for consideration as on delayed leave granted.[1] Defendant appeals the trial court's order denying his successive motion for relief from judgment. We affirm.

In 1991, while still a juvenile, defendant shot and killed two men. As part of a plea agreement with the prosecution, defendant pleaded guilty to two counts of second-degree murder, MCL 750.317, and two counts of possessing a firearm when committing or attempting to commit a felony (felony-firearm), MCL 750.227b(1). In exchange for defendant's guilty pleas, the prosecution reduced the charges in one of the cases from first-degree murder, MCL 750.316, to second-degree murder, MCL 750.317, with defendant sentenced to two concurrent-sentences of life imprisonment with the possibility of parole after 10 years and the mandatory two-year sentence for the felony-firearms conviction. In pleading guilty to second-degree murder, defendant avoided the mandatory sentence of life imprisonment without the possibility of parole, were he found guilty of first-degree murder.

Over the next quarter-century, defendant filed several motions for relief from judgment in the trial court, all of which were denied. In 2016, after several United States Supreme Court decisions regarding the sentencing of juvenile offenders, defendant filed another successive motion for relief of judgment in the trial court asserting that there has been a retroactive change in

---

[1] *People v Stovall*, 504 Mich 892 (2019).

the law warranting the withdrawal of his guilty plea and the vacating of his sentences. After considering defendant's motion, the trial court determined defendant was not entitled to relief from judgment because of the validity of his sentences. This appeal ensued.

## I. STANDARDS OF REVIEW

This Court reviews "a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010) (citations omitted). "Interpretation of a court rule is treated like interpretation of a statute, it is a question of law that is reviewed de novo." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). Similarly, questions of constitutional law are reviewed de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

Unpreserved constitutional claims are reviewed against the plain-error standard. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014), citing *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (quotation marks, citations, brackets, and footnote omitted).]

## II. APPLICABLE LEGAL PRINCIPLES

Defendant premises much of his argument on two recent cases decided by the United States Supreme Court that exerted a significant change on the sentencing of juvenile offenders. In *Miller v Alabama*, 567 US 460, 479; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the Supreme Court held that the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution, forbids "a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." In reaching this conclusion, the *Miller* Court's reasoning was concerned with the mandatory nature of these punishments denying a sentencing judge the opportunity to make individualized sentencing determinations and considering a juvenile's age or circumstances before deciding whether a sentence of life imprisonment without the possibility of parole was appropriate. *Id.* at 477-478, 480. However, *Miller* did not categorically reject life imprisonment without the possibility of parole for juvenile offenders. Rather, it required that sentencing courts consider an offender's juvenile status and connected circumstances before

determining whether a sentence of life without the possibility of parole was a proportionate sentence. *Id*. at 479.

Six years later, the Supreme Court revisited its *Miller* holding in *Montgomery v Alabama*, ___ US ___; 136 S Ct 718; 193 L Ed 2d 599 (2016). Writing for the majority, then Justice Anthony Kennedy described *Miller* as holding "that a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing." *Id*. at ___; 136 S Ct at 725. While *Miller* expressed a procedural requirement, its holding established that the penological justifications that supported sentencing juvenile offenders to life in prison without the possibility of parole "collapse in light of 'the distinctive attributes of youth.'" *Id*. at ___; 136 S Ct at 734 (quoting *Miller*, 132 S Ct at 2469). As a result, *Miller* announced a substantive rule of law that life imprisonment without the possibility of parole is an excessive punishment for juvenile offenders "whose crimes reflect transient immaturity." *Id*. at ___; 136 S Ct at 735. And because *Miller* announced a substantive rule of constitutional law, its holding had retroactive effect for those juvenile offenders who had been sentenced before *Miller* was decided. *Id*. at ___; 136 S Ct at 736. The Supreme Court suggested that, as an alternative to relitigating sentences that violated *Miller*'s holding, states could remedy the situation by providing juvenile offenders serving mandatory sentences of life imprisonment without the possibility of parole the possibility to be considered for parole. *Id*. at ___; 136 S Ct at 736.

Defendant asserts that these two decisions constituted a retroactive change in the law that rendered his sentences of life imprisonment with the possibility of parole invalid. And, as a result, the trial court erred in denying his successive motion for relief from judgment. We disagree.

III. ANALYSIS

Before turning to defendant's substantive claims, we must first address a procedural argument put forward by the prosecution. Under MCR 6.502(G)(1), one of several court rules that govern motions for relief from judgment, a criminal defendant is entitled to file "one and only one motion for relief from judgment . . . with regard to a conviction." However, a defendant can file a second or subsequent motion for relief from judgment on the basis of "a retroactive change in law that occurred after the first motion for relief from judgment . . . ." MCR 6.502(G)(2). It is undisputed that *Miller* and *Montgomery* brought about a retroactive change in the law after defendant filed his first motion for relief from judgment in 1995. The court rule allows a defendant to file a motion for relief from judgment on the basis of a retroactive change in the law that occurred after a defendant's first motion for relief from judgment, which is precisely what defendant did in the trial court. And defendant's arguments in the trial court and before us rely on the retroactive change defined in *Miller* and *Montgomery*. While these Supreme Court cases may not, as the trial court concluded, provide substantive support for defendant's motion, they tenuously meet the procedural requirement to allow defendant to file a successive motion for relief from judgment. As a result, we will address defendant's substantive claims.

## A. ILLUSORY PLEA BARGAIN

Defendant first asserts the trial court abused it discretion in denying his successive motion for relief from judgment because his guilty plea was the result of an illusory plea bargain. We disagree.

Defendant pleaded guilty to two counts of second-degree murder and two counts of felony-firearm, as a result of a plea agreement he entered into with the prosecution. "A defendant pleading guilty must enter an understanding, voluntary, and accurate plea." *People v Brown*, 492 Mich 684, 688-689; 822 NW2d 208 (2012) (footnote and citation omitted). "To ensure that a guilty plea is accurate, the trial court must establish a factual basis for the plea. In order for a plea to be voluntary and understanding, the defendant must be fully aware of the direct consequences of the plea." *People v Pointer-Bey*, 321 Mich App 609, 616; 909 NW2d 523 (2017) (quotation mark and citations omitted). When, as is the case here, "a plea is offered pursuant to a bargain with the prosecutor, voluntariness depends upon the defendant's knowledge of the actual value of the bargain." *People v Williams*, 153 Mich App 346, 350; 395 NW2d 316 (1986). "A criminal defendant may be entitled to withdraw his or her guilty plea if the bargain on which the guilty plea was based was illusory, i.e., the defendant received no benefit from the agreement." *Pointer-Bey*, 321 Mich App at 621. Similarly, "an illusory plea bargain is one in which the defendant is led to believe that the plea bargain has one value when, in fact, it has another lesser value." *Williams*, 153 Mich App at 351 (citation omitted). In this case, the prosecution reduced the first-degree murder charge for defendant's killing of an individual, in exchange for defendant pleading guilty to two counts of second-degree murder. Defendant asserts that, because he pleaded guilty to a lesser offense to avoid an unconstitutional sentence, his plea bargain was illusory. However, this is neither supported by the facts nor by the law.

Undoubtedly, defendant's plea bargain allowed him to avoid a sentence that would subsequently be declared unconstitutional by the Supreme Court in *Miller* and *Montgomery*. It does not follow, however, that the plea bargain was wholly without benefit. Under the terms of the second-degree murder statute, MCL 750.317, defendant could have been sentenced to imprisonment for "any term of years," in the sentencing court's discretion. But, consistent with the terms of the plea agreement, defendant was sentenced to life imprisonment with the possibility of parole after serving 10 years of the second-degree murder sentences and the two-year felony-firearm sentence. Wholly apart from avoiding the unconstitutional sentence, defendant received the benefit of a certain-date at which he would become eligible for consideration of release on parole and avoided the risk of being found guilty of first-degree murder, and a more severe sentence. Moreover, *Miller* and *Montgomery* did not categorically bar sentences of life imprisonment without parole for juveniles but required an individualized sentencing hearing to determine whether such a sentence is proportionate after considering a defendant's juvenile status. *Miller*, 567 US at 479; *Montgomery*, ___ US at ___; 136 S Ct at 734. Thus, defendant's choice to plead guilty to a lesser offense definitively removed a life imprisonment without parole sentence from the range of possible penalties facing defendant. As a result, defendant received a benefit for having pleaded guilty, apart from avoiding an unconstitutional sentence.

Yet, even if the only benefit defendant received was the avoidance of an unconstitutional sentence, this would not, as a matter of law, render the plea bargain illusory. As articulated by the Supreme Court in *Brady v United States*, 397 US 742, 757; 90 S Ct 1463; 25 L Ed 2d 747 (1970):

absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.

There is nothing in the record to suggest that the prosecution or defendant's counsel misrepresented the applicable law to defendant when defendant chose to accept the plea bargain or enter his guilty plea. Nor is there any evidence that any party in this case was aware that mandatory sentences of life imprisonment without the possibility of parole for juvenile offenders were impermissible under the Eighth Amendment. Defendant voluntarily admitted to killing two people and received the agreed-upon sentences. As the Supreme Court further articulated in *Brady*, the United States Constitution does not require "that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that . . . the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." *Id*. The record indicates that all parties in this case, including the sentencing judge, moved forward in good faith, applying the law as it was understood at the time. Defendant was aware of the terms of the plea agreement and stated, on the record, that he understood the terms of his sentences. That one part of defendant's calculus in deciding to accept the plea bargain—the mandatory sentence of life without the possibility of parole if found guilty of first-degree murder—was rendered unconstitutional nearly 20 years later does not, under the terms of *Brady*, render the plea bargain illusory or invalidate defendant's pleas.

Finally, defendant asserts his pleas were invalid because he lacked the capacity to understand the terms and consequences of the plea bargain. Rather, the sentencing court should have considered his juvenile status as part of the plea-process and, defendant alleges, the court's failure to do so violated due process. We note that defendant did not raise this argument in the trial court as part of his successive motion for relief from judgment and, as a result, it is unpreserved for appeal. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). As unpreserved constitutional error, this claim is subject to plain-error review. *Vandenberg*, 307 Mich App at 61.

Defendant asserts that the sentencing court was required to take account of his juvenile status when accepting his guilty plea in accordance with the terms of the plea bargain. However, defendant was more than 18 years old when he agreed to the plea bargain and entered his plea. At defendant's plea hearing, the court and defendant's counsel explained to defendant the terms of the plea agreement and sentence; and defendant stated on the record that he understood the terms. At no point did defendant state that he did not or could not understand. Further, defendant states in his brief to this Court that he understood the terms of the plea agreement to mean he would be sentenced to life imprisonment and be eligible for parole after serving 10 years. Considering these are the terms of the plea agreement entered on the record and the sentence defendant received, this undermines his assertion that, somehow, he lacked the capacity to understand what he was

agreeing to. Rather, this seems more akin to a defendant seeking to withdraw his plea because he is dissatisfied with the sentence to which he agreed. However, dissatisfaction with a sentence does not render a guilty plea invalid. See *People v Foster*, 291 Mich App 363, 378; 804 NW2d 878 (2011) (stating "dissatisfaction with the sentence or incorrect advice from the defendant's attorney" does not constitute justification for withdrawal of a guilty plea). Considering all these factors and the record available, we cannot conclude the sentencing court erred when it failed to consider defendant's purported juvenile status when it accepted his guilty pleas under the terms of the agreed-upon plea bargain.

Because defendant's sentences were not premised on a guilty plea resulting from an illusory plea bargain, it was not outside the range of principled outcomes for the trial court to deny defendant's successive motion for relief from judgment on this basis.

## B. CONSTITUTIONAL CLAIMS

Defendant next asserts that the trial court abused its discretion in denying defendant's successive motion for relief from judgment because his sentences violate due process and constitute cruel or unusual punishment. We disagree.[2]

We begin with defendant's claim that his sentences constitute cruel or unusual punishment. "The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). Generally, the protection afforded under the Michigan Constitution is considered to be broader than that provided for under the United States Constitution. As a result, "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id.* (quotation marks and citation omitted).

"The Eighth Amendment's prohibition of cruel and unusual punishment guarantees individuals the right not to be subjected to excessive sanctions." *Miller*, 567 US at 469. In construing this principle, the Supreme Court held in *Miller* that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." *Id.* at 465. While these sentences violate the Eighth Amendment, the Supreme Court further stated that "[a] State is not required to guarantee eventual freedom, but must provide [juveniles] some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 479 (quotation marks and citation omitted). Further, in *Montgomery*, the Supreme Court held that the rule announced in *Miller* applied retroactively to juvenile offenders. *Montgomery*, ___ US at ___; 136 S Ct at 736. This Court has interpreted the holding of these two cases to guarantee that defendants convicted as juveniles "at a maximum are afforded some meaningful opportunity to obtain release based on demonstrated

---

[2] Although the trial court did not address these issues in its order denying defendant's motion, we exercise our discretion to resolve these issues which defendant presented to the trial court because the record provides "all the facts necessary to resolve [the] issue[s] . . . ." *Metamora Water Serv, Inc*, 276 Mich App at 382 (citation omitted).

maturity and rehabilitation. At a minimum, these cases apply only to mandatory sentences of life without the possibility of parole." *People v Williams*, 326 Mich App 514, 521; 928 NW2d 319 (2018), rev'd on other grounds ___ Mich ___; 940 NW2d 75 (2020).[3]

Applying these principles, as they were construed in *Williams*, we conclude that defendant's sentences do not constitute cruel or unusual punishment. If the rule articulated in *Miller* and *Montgomery* is given a minimal reading, defendant's sentences do not violate the Eighth Amendment, because defendant did not receive a mandatory sentence of life imprisonment without parole. *Williams*, 326 Mich App at 521-522. Conversely, if *Miller* and *Montgomery* are given a maximal reading, defendant's sentences still comport with the Eighth Amendment's requirement that juvenile offenders be given a meaningful opportunity to obtain release on the basis of his maturity and rehabilitation. *Id.* at 521. As is demonstrated by the record, defendant is eligible and has been considered for parole. Under this Court's decision in *Williams*, this constitutes a meaningful opportunity for release, as required by *Miller*. *Id.* at 522. "And because defendant has some meaningful opportunity to obtain release from his sentence of life with the possibility of parole, that sentence was not invalid under *Miller*." *Id.* While defendant has, until now, been unsuccessful in obtaining release does not render his sentences violative of the Eighth Amendment. *Miller* requires only that defendant be provided a meaningful opportunity to obtain release, not that he be guaranteed eventual freedom. *Miller*, 567 US at 479 (citation omitted).

Defendant invites this Court to extend the provisions of *Montgomery* and *Miller* to sentences beyond those labeled "life without parole." In support of this invitation, defendant makes mention of a multitude of cases decided by the supreme courts of our sister states and

---

[3] In *Williams*, unlike the case at bar, the defendant was convicted of both first-degree murder and second-degree murder. Like the current case, the defendant received resentencing in light of *Miller v Alabama*. And like defendant in this case, the defendant in *Williams* argued that he was also entitled under *Miller* to be resentenced on his second-degree murder conviction. The defendant in *Williams* advanced two principal arguments: (1) that the decision in *Miller* also invalidated his life-with-parole sentence for second-degree murder and (2) that the sentencing judge's belief that the defendant's mandatory sentence of life without parole on the first-degree murder conviction, now deemed invalid, may have improperly influenced the judge's sentencing decision on the second-degree murder conviction. This Court rejected both arguments. *Williams*, 326 Mich App at 519. The Michigan Supreme Court thereafter reversed, holding that the trial court "shall consider whether the sentence for second-degree murder was based on a legal misconception that the defendant was required to serve a mandatory sentence of life without parole for first degree murder." ___ Mich at ____. That is, it accepted the defendant's second argument, an argument not available to defendant in our case as he was not facing a mandatory life sentence.

Our consideration of *Williams* in this case is only in regards to the defendant's first argument, whether *Miller* applies to sentences of life with parole for second-degree murder. The Michigan Supreme Court did not consider, nor did it reverse, this Court's analysis and conclusion on that issue.

several federal circuit courts of appeal. We note that these sorts of cases lack precedential authority, but can be considered for their persuasive value. See *People v Walker (On Remand)*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019) (quotation marks and citation omitted) ("While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority."). However, none of the cases defendant relies on address the sentence at-issue here—life imprisonment with the possibility of parole in 10 years. Rather, they deal with the constitutionality of term-of-years sentences that act as de facto life sentences. "[A] sentence of life *with* the possibility of parole is not a de facto sentence of life *without* the possibility of parole." *Williams*, 326 Mich App at 521 n 3. Defendant's sentences are different not only in degree, but kind, and the cases which he relies on to extend *Miller* and *Montgomery* are inapposite to this goal.

Defendant also asserts that his sentences constitute cruel or unusual punishment because the parole process for individuals serving sentences of life imprisonment with the possibility of parole denies him the opportunity to demonstrate his maturity and rehabilitation. This, in turn, denies defendant a meaningful and realistic opportunity for release. In support, defendant asserts that the parole review procedures available for juvenile offenders who were resentenced after *Miller* and *Montgomery* invalidated their unconstitutional mandatory sentences of life imprisonment without the opportunity for parole are less onerous than those faced by defendant. Defendant asserts that the parole board must consider his youth at the time of the crime and his subsequent maturity and rehabilitation for his sentences to be constitutional. And in support of this assertion, he relies on an unpublished case from a federal district court.[4] While we accept the possibility that the parole board's policies and procedures may not comport with the requirements of *Miller* and *Montgomery*, a motion for relief from judgment is not the proper procedural vehicle through which defendant can pursue those claims. Defendant's sentences, as imposed by the sentencing court, comport with the Eighth Amendment because they provide him with a meaningful opportunity for release. That the parole board's policies stymie defendant's efforts is a matter to be asserted against the parole board, and is not a ground for vacating defendant's sentences.

Finally, defendant asserts that his sentences violate due process because neither the sentencing court nor the parole board have considered his juvenile status and attendant circumstances. However, none of the authorities on which defendant relies support this assertion. While *Miller*, 567 US at 480, requires a sentencing court to consider "how [juveniles] are different," these differences are to be considered "before determining that life without parole is a proportionate sentence," *Montgomery*, ___ US at ___; 136 S Ct at 734. The clear language of these opinions does not support the proposition, as defendant asserts, that consideration of a

---

[4] While "state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts." *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004) (citations omitted). As a result, "[a]lthough lower federal court decisions may be persuasive, they are not binding on state courts." *Id*. at 607.

defendant's juvenile status is a procedural requirement when sentencing all individuals convicted of a crime committed while a juvenile. In this case, defendant was not sentenced to either a mandatory or a discretionary sentence of life imprisonment without the possibility of parole. Rather, he received a sentence that expressly provided for the possibility of parole. As a result, he was afforded some "hope for some years of life outside prison walls . . . ." *Id*. at 736-737.

This discussion also undermines defendant's claim that he is being denied due process by the parole board's policies and procedures. Generally, a parole board's consideration of an individual's application for parole does not implicate a due process right. "That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained . . . a hope which is not protected by due process." *Glover v Parole Bd*, 460 Mich 511, 520; 596 NW2d 598 (1999), quoting *Greenholtz v Inmate of the Nebraska Penal & Correctional Complex*, 442 US 1, 11; 99 S Ct 2100; 60 L Ed 2d 668 (1979). *Miller* and *Montgomery* undoubtedly establish a procedure at sentencing that requires a sentencing court to weigh a juvenile offender's status before determining whether that individual is one of the rare juvenile offenders who "may be sentenced to life without parole . . . ." *Montgomery*, ___ US at ___; 136 S Ct at 735 (citation omitted). And the Supreme Court's solution in *Montgomery* was to allow those juvenile offenders who had not been given the opportunity to demonstrate they did not fall into that class to be considered for parole. *Id*. at ___; 136 S Ct at 736. But, defendant was never a member of that class of offenders and, after serving the required minimum sentence, has always been eligible for parole. There is nothing in these opinions to imply that defendant's sentences to life imprisonment with the possibility of parole are invalid because they deny defendant a parole process aimed toward a meaningful opportunity for release. As discussed earlier, while the parole board's policies and procedure may not comport with the Eighth Amendment, defendant's constitutional claim lies with those policies and not with the validity of his sentences.

Because defendant's sentences of life imprisonment with the possibility of parole do not violate due process or constitute cruel or unusual punishment, the trial court did not abuse its discretion in denying defendant's successive motion for relief from judgment.

Affirmed.

/s/ David H. Sawyer
/s/ Patrick M. Meter