GLOVER v PAROLE BOARD

Docket No. 111221. Argued January 22, 1999 (Calendar No. 12). Decided
    July 13, 1999.

Mary Glover pleaded guilty to one count of second-degree murder and
    two counts of assault with intent to commit murder, and was sen-
    tenced to three concurrent parolable life sentences. After eighteen
    years of incarceration, she sought parole, and the parole board
    voted to move her request to a public hearing. Following the hear-
    ing, the board declined to grant parole. The petitioner then sought
    review in the Ingham Circuit Court, complaining that the parole
    board had not provided a detailed statement explaining its decision
    to deny her parole; that it had violated the Open Meetings Act
    because its decision was made without public notice, and that MCL
    791.234(4)(a); MSA 28.2304(4)(a), which had changed the interval
    of a parole interview for a person sentenced to life imprisonment
    from every two years to every five years, violated the Ex Post
    Facto Clauses of the federal and Michigan Constitutions. The court,
    Thomas L. Brown, J., rejected each of the petitioner's claims. The
    Court of Appeals, MICHAEL J. KELLY, P.J., and WAHLS, J. (GAGE, J., con-
    curring in part and dissenting in part), reversed, holding that, while
    no statute required the parole board to provide a written explana-
    tion for its decision to deny parole, the petitioner nevertheless had
    a right under the federal and state Due Process Clauses to a writ-
    ten explanation of why she had been denied parole; no ex post
    facto violation had occurred; and the parole board had violated the
    Open Meetings Act by making its final decision to deny parole
    without public notice. The Court remanded the case to the parole
    board for further proceedings. 226 Mich App 655 (1997) (Docket
    No. 189303). The parole board appeals.

    In an opinion by Justice BRICKLEY, joined by Chief Justice
    WEAVER, and Justices CAVANAGH, KELLY, and YOUNG, the Supreme
    Court held:

    1. Persons serving parolable life terms who are denied parole
    are entitled under MCL 791.235(12); MSA 28.2305(12) and MCL
    791.234(8); MSA 28.2304(8) to a written explanation for the board's
    decision and, where appropriate, specific recommendations for cor-
    rective action the prisoner may seek to facilitate release. In this
    case, the parole board's explanation for denying parole was inade-

quate for judicial review, requiring remand to the board for a suffi-
ciently detailed written explanation under MCL 791.235(12); MSA
28.2305(12). The board is not required to provide extensive findings
of fact and conclusions of law or legal opinions when it denies or
grants a life prisoner parole. Rather, it should indicate what it
relied on in reaching its decision.

2. While MCL 15.263(2); MSA 4.1800(13)(2) provides that all
decisions of a public body are to be made at a meeting open to the
public, the amendment of MCL 791.202(2); MSA 28.2272(2)
exempted the board from this requirement.

Justice TAYLOR, joined by Justice CORRIGAN, concurring, stated
that the remand ordered by the Court of Appeals should be
affirmed on the basis of MCL 791.234(8); MSA 28.2304(8), and MCR
7.104(D)(7). In the statute, the Legislature has implicitly chosen to
give a reviewing court the ability to request a written explanation
should it deem further explanation necessary. MCR 7.104(D)(7),
which echoes the legislation in part, provides a procedure for a
reviewing court to invoke. It was not necessary to reach whether
Ms. Glover had a statutory right to a written explanation pursuant
to MCL 791.235(12); MSA 28.2305(12).

Affirmed in part, reversed in part, and remanded.

*Neal Bush* and *John F. Royal* for plaintiff-appellee.

*Jennifer M. Granholm,* Attorney General, *Thomas
L. Casey,* Solicitor General, and *Chester S. Sugierski,
Jr.,* Assistant Attorney General, for defendant-
appellant.

Amici Curiae:

*Barbara R. Levine* for Prisons and Corrections Sec-
tion, State Bar of Michigan.

*Jeanice Dagher-Margosian* and *Stuart G. Fried-
man* for American Civil Liberties Union Fund of
Michigan and Criminal Defense Attorneys of
Michigan.

BRICKLEY, J. We granted leave to appeal in this case
to review the propriety of the Court of Appeals hold-
ings that (1) an individual serving a parolable life sen-

tence has a federal and state due process right to a written explanation of why parole was denied, and (2) the parole board is subject to the Open Meetings Act.[1]

Although we reverse the Court of Appeals holding regarding the due process and OMA questions, we affirm the remand to the parole board for a more detailed written explanation on the basis of MCL 791.235(12); MSA 28.2305(12).

### FACTS AND PROCEEDINGS BELOW

On January 19, 1976, then twenty-one-year-old Mary Glover and her husband decided to steal some money from a gas station in Shiawasee County. While Ms. Glover's husband kept the attendant busy, Ms. Glover removed some money from a cash register. The Glovers were detained by gas station employees when the till was found to be open. Ms. Glover's husband slipped Ms. Glover a handgun he had and asked her to hide it. Ms. Glover hid the gun in the ladies' room toilet. A few minutes later, Ms. Glover's husband asked Ms. Glover to retrieve the gun so they could escape. Ms. Glover retrieved the gun and handed it to her husband. While attempting to escape apprehension, Ms. Glover's husband shot three people. One of the victims died immediately, and two others were seriously wounded. Ms. Glover was charged with one count of felony murder and two counts of assault with intent to commit murder. Pursuant to a plea bargain entered into after two days of trial, Ms. Glover pleaded guilty to one count of second-degree murder and two counts of assault with

---

[1] MCL 15.261 et seq.; MSA 4.1800(11) et seq.

intent to commit murder.[2] The trial court subse-
quently imposed three concurrent parolable life
sentences.[3]

In 1994, i.e., after eighteen years of incarceration,
the parole board voted to move Ms. Glover's request
for parole to a public hearing. The successor judge[4]
declined to exercise his right under MCL
791.234(6)(b);  MSA 28.2304(6)(b) to file a written
objection and thereby bar the public hearing that
must occur before a parole can be granted.

A public hearing was held on May 25, 1994. As the
Court of Appeals stated:

> Appellant's case might be described as a cause celebre.
> Her many supporters submitted letters[5] and gave testimony

---

[2] Ms. Glover's husband is serving life without parole, having been con-
victed by a jury of felony murder.

[3] The judgment of sentence actually used the words "natural life." How-
ever, a trial court is without authority to impose a life without parole sen-
tence for second-degree murder or assault with intent to murder, and,
thus, use of the word "natural" constitutes ineffectual surplusage. See *Peo-
ple v Rowls*, 28 Mich App 190, 194; 184 NW2d 332 (1970).

[4] The actual successor to the sentencing judge had been the prosecutor
when Ms. Glover pleaded guilty. Accordingly, the judge disqualified him-
self, and the State Court Administrator appointed another judge to serve
as the successor judge.

[5] E.g., Michigan Federal District Judge John Feikens submitted the fol-
lowing letter:

I write in support of a grant of parole to Mary Glover.

As a federal judge I have for many years been involved in the
correctional system as it affects women in this State. The Depart-
ment of Corrections and I have been working toward and reaching
a balanced constitutional view of women in prison.

The case that has been the mechanism through which positive
results have occurred bears Mary Glover's name. She, together with
other women, are the persons involved in the original class action
suit which came before me. Her contribution and presence in that
case have always been positive.

It is because of my recognition of her contribution that I am
motivated to write this letter to you. She has distinguished herself

at the public hearing urging the Parole Board to grant parole. Their testimony established that appellant has put her talents and industry to extensive use while in prison. Appellant earned college degrees with high honors and received a prestigious literary award. She was active in social and religious programs for prisoners, and involved herself in a ground-breaking federal lawsuit that has enhanced opportunities for the female inmates of this state.[1] However, relatives and friends of the victims, as well as community members, opposed parole[6] for various reasons, not the least being the tragic loss they had experienced as a result of appellant's acts.

---

[1] *Glover v Johnson*, 721 F Supp 808 (ED Mich, 1989), aff'd in pertinent part 934 F2d 703 (CA 6, 1991).

---

[226 Mich App 655, 657-658; 575 NW2d 772 (1997).]

At the conclusion of the hearing, the chairperson of the parole board stated in pertinent part:

---

as an inmate over many years in assisting not only to improve the attitude of women inmates toward a realistic accommodation of their condition, but she also has grown as a person in that effort.

It is for these reasons that I write in support of her request.

[6] The following letter is representative of the sentiments of many who opposed granting Ms. Glover parole:

To whom it may concern[:] In regard to the hearing for the release of Mary Glover # A-145435. This person was sentenced to serve life imprisonment. She should not be released. I was the owner of the establishment where her crime was committed. That was the very worst day of my life. She was the one that started the happening by getting into my cash register and taking money from it. From then on it sno[w]balled into the shooting where George Root was killed—two others were wounded one of which died as a result. No amount of rehabilitation can cause her to be worthy of release. Do not turn this person loose.

Also adduced at the hearing was Ms. Glover's receipt of twenty-nine misconducts during her incarceration.

I would be lying to any one of you if I said there's no way she is ever going to get out because we wouldn't be here if it wasn't close . . . . What will happen at this point in time is the Parole Board will have to weigh this.

On August 1, 1994, the parole board issued the following Notice of Action declining to grant parole:

After full consideration of the positions taken by those testifying at the public hearing and consideration of the adjustment, attitude and behavior of the prisoner, the parole board withdraws interest in proceeding toward parole at this time. You will next be interviewed by the parole board five years from your most recent interview as indicated in the official date above.

Ms. Glover sought judicial review of this denial with the circuit court, complaining that the parole board had not provided a sufficiently detailed statement explaining its decision to deny her parole, that the parole board had violated the OMA because the decision to deny parole was made without public notice, and that a recent statute[7] changing the interval of a lifer's parole interview from every two years to every five years violated the Ex Post Facto Clauses of the federal and Michigan Constitutions.[8] The circuit court rejected each of Ms. Glover's claims.

The Court of Appeals granted Ms. Glover's application for leave to appeal. The Court of Appeals found the parole board's explanation for denying parole inadequate, stating:

In the face of a mountain of information concerning appellant's correctional history, the Parole Board here

---

[7] 1992 PA 181, MCL 791.234(4)(a); MSA 28.2304(4)(a).

[8] US Const, art I, § 10; Const 1963, art 1, § 10.

abjured any meaningful explanation. It indicated that it considered all the information before it and decided to "withdraw" interest in or consideration of parole. In other words, thumbs down. The Attorney General suggested during oral argument before this panel that we should undertake the review process that led the Parole Board to its decision by examining all the exhibits, reading all the testimony, briefs, and records and deciding on that basis whether the board had abused its discretion. That is not a review; it invites instead a post facto justification of a decision that we are unqualified to make at the outset. The Parole Board did indicate a "reason code of 92," which refers to the "lifer law interview." We take that to mean that the Parole Board considered its job to conduct an interview of the appellant because it had to, declined to grant parole, and gave no reasons because it need not. We do not think that passes federal or state due process constitutional muster. [226 Mich App 668-669, n 3.]

The Court of Appeals held as follows: (1) no statute required the parole board to provide a written explanation for its decision to deny parole, (2) Ms. Glover nevertheless had a right under the federal and state Due Process Clauses to a written explanation of why she had been denied parole, (3) no ex post facto violation had occurred,[9] and (4) the parole board had violated the OMA by making its final decision to deny parole without public notice. The Court remanded the case to the parole board so that it could provide a written explanation and retained jurisdiction, holding in abeyance consideration of the merits pending review of the board's written explanation. *Id.* at 670.[10]

---

[9] This part of the Court of Appeals holding is not being challenged on appeal, and, hence, we do not discuss it other than to note that it is in accord with *Shabazz v Gabry*, 123 F3d 909 (CA 6, 1997).

[10] Judge GAGE concurred that no statute required the parole board to provide a written explanation of why it declined to parole Ms. Glover and

We subsequently granted the parole board's application for leave to appeal.[11]

THE BOARD'S "EXPLANATION"

The primary issue in this case is whether Ms. Glover is entitled to a written explanation of the reason the parole board denied her request for parole. Before considering that question, however, we first must determine whether Ms. Glover has already received an adequate explanation. If she has, there is no need to remand or reach the other questions in this case.

The record of the public hearing reveals that there was substantial support for Ms. Glover's request for parole. Numerous letters of support had been submitted. Testimony showed Ms. Glover's educational achievements, her involvement in religious activities while incarcerated, her participation in individual and group psychotherapy, and a psychological report indicating that she did not need further psychotherapy. Moreover, resident unit managers filed positive reports, Ms. Glover had a confirmed offer of employment, and one of the deceased victim's children testified in favor of granting Ms. Glover parole.

Notwithstanding the impressive presentation on behalf of Ms. Glover, the record of the public hearing also establishes that there was significant opposition to a grant of parole. There was testimony from the surviving victim and relatives of the victims, all of whom opposed parole, along with a number of com-

that no violation of the Ex Post Facto Clauses had occurred. However, Judge GAGE dissented from the majority's due process and OMA holdings.

[11] 458 Mich 867 (1998).

munity members expressing similar sentiments. A record was also established showing twenty-nine prison misconduct reports, numerous letters in opposition, and a petition signed by approximately 1,200 people who opposed, as a general matter, any parole for prisoners serving life sentences.

That this was a difficult decision was made clear when the chairperson of the parole board stated at the conclusion of the public hearing "we wouldn't be here if it wasn't close." The parole board, after exercising its discretion to grant or deny parole, was required, pursuant to MCL 791.234(8); MSA 28.2304(8),[12] to provide a sufficient explanation for its decision, thereby allowing meaningful appellate review. The board failed, given the record herein, to provide such an explanation. It stated in its notice of action that it withdrew its interest in proceeding toward parole, citing only that it had considered "the positions taken by those testifying" and had considered the "adjustment, attitude and behavior of the prisoner . . . ." We find that there is a lack of clarity regarding what about these factors compelled the board to act that caused the Court of Appeals to remand to the parole board for explication of its reason for denying parole. The Court of Appeals rightly decided that the board had "abjured any meaningful explanation," 226 Mich App 668, n 3, and we conclude that the Court of Appeals remand in the instant case was well within its authority, although, as we hold below, its cited justification for the remand was in error. Having determined that the board's explanation

---

[12] As explained below, § 34(8) provides that an inmate's release on parole is discretionary with the parole board, but is also appealable to the circuit court.

is inadequate for judicial review, we now turn to the questions decided by the Court of Appeals in this case.

DUE PROCESS

The Court of Appeals held that Ms. Glover had a federal and a state due process right[13] to have the parole board provide a sufficiently detailed written explanation of its decision to deny her request for parole. In concluding that Ms. Glover's due process rights had been violated, the Court of Appeals relied solely upon a dissenting opinion from *Greenholtz v Inmates of Nebraska Penal & Correctional Complex,* 442 US 1; 99 S Ct 2100; 60 L Ed 2d 668 (1979). The *Greenholtz* majority held: "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained . . . a hope which is not protected by due process." *Id.* at 11.[14] The dissenting opinion would have held that due

_____

[13] US Const, Am V provides:

   No person shall be . . . deprived of life, liberty, or property, without due process of law . . . .

US Const, Am XIV provides:

   No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . .

Const 1963, art 1, § 17 provides:

   [N]o person shall . . . be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

[14] Accord, *Sweeton v Brown,* 27 F3d 1162, 1165 (CA 6, 1994) ("there is not now any viable legal theory by which Michigan state authorities are

process must be observed during parole release proceedings. *Id.* at 23 (Marshall, J., dissenting).

The United States Supreme Court is the final arbiter regarding the meaning of the federal constitution, *Marbury v Madison*, 5 US (1 Cranch) 137; 2 L Ed 60 (1803), and the federal judiciary is supreme in the exposition of the federal constitution. *Cooper v Aaron*, 358 US 1, 18; 78 S Ct 1401; 3 L Ed 2d 5 (1958). Neither the Court of Appeals nor any other court, save for the United States Supreme Court itself on rehearing or in a later case, is free to hold that the federal constitution provides a right that a majority opinion of the United States Supreme Court says it does not contain.[15] Accordingly, we reverse the Court of Appeals holding that Ms. Glover's federal due process rights were violated when the parole board failed to provide a sufficiently detailed explanation for its decision.

The Court of Appeals also held that Ms. Glover's state due process rights required the parole board to

---

required to follow such procedural rules as a matter of federal due process").

[15] Although the Court of Appeals was free to express its disagreement with the *Greenholtz* majority and to urge the United States Supreme Court to overrule the decision, it thereafter had to abide by the majority opinion.

Amicus Curiae Prison and Corrections Section of the State Bar of Michigan argues that the continuing viability of *Greenholtz* has been seriously undermined by *Sandin v Conner*, 515 US 472; 115 S Ct 2293; 132 L Ed 2d 418 (1995). However, amicus curiae also states that "[t]he implications of *Sandin* for due process in the parole context are unclear" and concedes that *Sandin* did not purport to overrule *Greenholtz*. Given such circumstances, we are satisfied that Ms. Glover's federal due process rights were not violated by the parole board's terse explanation. We agree with Judge GAGE's conclusion that Ms. Glover has not demonstrated a protectable interest covered by due process guarantees that entitles her to a more detailed explanation of the reasons behind the parole board's denial of parole. 226 Mich App 680.

provide a sufficiently detailed written explanation of its decision to deny parole.

This Court is, of course, free to find that an individual has greater rights under a Michigan constitutional provision than under its federal counterpart when compelling reasons to do so exist.[16] The Court of Appeals, however, engaged in no analysis of the Michigan constitutional language independent of the federal constitutional language, nor did it examine or base its state due process ruling on the second sentence of art 1, § 17. Because we hold below that statutory grounds exist to affirm the Court of Appeals decision to remand this matter to the parole board, we find no call to consider whether a compelling reason justifies us in interpreting our state constitution as conferring greater rights on parolable life prisoners than the federal constitution.[17]

### STATUTORY RIGHT TO A WRITTEN EXPLANATION

The Court of Appeals determined that Ms. Glover did not have a statutory right to a written explanation of the parole board's decision. Anticipating that this Court might disagree with the Court of Appeals due process holding, Ms. Glover maintains, as she has throughout these proceedings, that Michigan parole

---

[16] See *Kivela v Treasury Dep't*, 449 Mich 220, 233; 536 NW2d 498 (1995); *Sitz v Dep't of State Police*, 443 Mich 744; 506 NW2d 209 (1993). We note, however, that the presence of an additional sentence in a state constitutional clause, after utilization of parallel language from the federal constitution, which is the case here, does not necessarily mean that the state constitutional provision is to be interpreted differently than the federal provision. See, e.g., *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 310-311; 553 NW2d 377 (1996).

[17] See, e.g., *Lisee v Secretary of State*, 388 Mich 32, 40-41; 199 NW2d 188 (1972).

statutes mandate that the parole board provide a petitioner a written explanation of its decision. We agree.

The parole board's jurisdiction is governed by MCL 791.234; MSA 28.2304. As explained above, § 34(8) expressly creates judicial review rights with respect to all parole decisions, providing both parolable lifers and those inmates serving indeterminate sentences a right of appeal by leave to the circuit court from adverse decisions by the parole board.[18]

Parole interviews are governed by MCL 791.235; MSA 28.2305. Section 35, which is entitled "Release of prisoner," sets forth an inmate's rights during the interview process and details, among other things, the permissible considerations at the interview, the right to advance notice of the interview, and the right to representation at the interview. More specifically, § 35(12) provides:

> When the parole board makes a final determination not to release a prisoner, the prisoner shall be provided with a written explanation of the reason for denial and, if appropriate, specific recommendations for corrective action the prisoner may take to facilitate release.

The Court of Appeals held that the "written explanation" provision in § 35(12) is applicable only to prisoners serving indeterminate sentences. We find nothing in § 35 remotely suggesting that parolable life

---

[18] Subsections 1 to 5 of § 34 apply to inmates who are serving sentences which contain a minimum term, i.e., indeterminate sentences; subsection 6 applies to inmates serving parolable life terms, and establishes a more stringent set of procedures that such inmates must successfully navigate to be granted parole. The parole board concedes, and Ms. Glover agrees, that subsection 8 provides for a right of review not just to inmates serving parolable life terms, but to inmates serving indeterminate sentences as well.

prisoner interviews are excluded from the require-
ments detailed in subsection 12, and the parole board
has not offered any compelling reasons why it should
be so construed.[19] Moreover, in addition to protecting
a petitioner's statutory right to a written explanation,
the need for a written explanation providing reasons
for a parole decision is necessary in order to facilitate
judicial review as provided for in § 34(8).[20] Accord-
ingly, we hold that individuals serving parolable life
terms and denied parole are statutorily entitled to a
sufficiently detailed written explanation for the
board's decision and, where appropriate, "specific
recommendations for corrective action the prisoner
may take to facilitate release." MCL 791.235(12); MSA
28.2305(12).[21]

We conclude that the Court of Appeals remand in
the instant case was well within its authority,
although its cited justification for the remand was in
error. Our holding today is narrow: Our decision is

---

[19] We note here that the parole board concedes that it utilizes, by stan-
dard practice, other subsections of § 35 in considering the parole both of
inmates serving parolable life terms, as well as inmates serving indetermi-
nate sentences.

[20] See, e.g., *In re Parole of Scholtz*, 231 Mich App 104; 585 NW2d 352
(1998) (holding that, while the board need not engage in opinion writing,
its explanation must contain sufficient reasons and detail to facilitate
appellate review for an abuse of discretion); *In re Parole of Roberts*, 232
Mich App 253, 258; 591 NW2d 259 (1998).

[21] The concurring opinion's reliance on MCR 7.104(D)(7) does not
resolve whether a petitioner is *entitled* to a written explanation at the
time of the board's decision, and whether such explanations must be rou-
tinely furnished. By its very terms, MCR 7.104(D)(7) is a discretionary
rule ("the court *may . . .*") designed to assist the decisional process
employed by the circuit court, the Court of Appeals, and this Court.

not based, as the Court of Appeals erroneously con-
cluded, on a constitutional right to a written explana-
tion; rather, it is simply an incident of the right to a
written explanation expressly provided for in MCL
791.235(12); MSA 28.2305(12), and implicitly pro-
vided for in MCL 791.234(8); MSA 28.2304(8). More-
over, the parole board is not required to provide
extensive findings of fact and conclusions of law, nor
do we insist upon legal opinions when it denies or
grants a life prisoner parole. Rather, the board should
simply indicate what it relied on in reaching its
decision.

In the instant case, the parole board stated that it
was denying parole after considering Glover's "adjust-
ment, attitude and behavior." However, there was tes-
timony that Glover had adjusted well, had a good atti-
tude, and had engaged in much good behavior. Simi-
larly, there was also evidence of a poor adjustment,
an insincere attitude, and bad behavior.[22] If the record
were one-sided, containing almost all negative infor-
mation about the prisoner, the explanation provided

---

[22] We do not suggest that the parole board is required to weigh the posi-
tive and negative evidence and then decide whether to grant parole by a
preponderance of the evidence standard. The ultimate decision whether
to grant parole is subject to the board's discretion. However, the board
remains obligated to provide a sufficient explanation pursuant to the
express language of § 35(12) protecting a petitioner's rights, along with
§ 35(8)'s implicit directive that the explanation facilitate meaningful judi-
cial review.

Likewise, we do not intimate that a reviewing court should remand for
an explanation whenever a prisoner's positive factors equal or outnumber
the negative factors. Rather, a remand is appropriate only when a review-
ing court, after surveying the explanation given and relevant record, can-
not discern, such as here, the basis of the parole board's decision.

Ms. Glover would likely be deemed adequate because such a record can only be reasonably understood in one way. However, here the record was not one-sided, and, in order to carry out the Legislature's directive in §§ 35(12) and 34(8), we require that the board provide greater explanation for its decision.

### OPEN MEETINGS ACT

Lastly, we consider the Court of Appeals holding that the parole board violated the OMA by deciding to deny Ms. Glover parole without public notice and in a closed, informal voting procedure.

MCL 15.263(2); MSA 4.1800(13)(2) provides that all decisions of a public body shall be made at a meeting open to the public. Subsections (7) through (11) exempt several public bodies from complying with the OMA.

As explained by the Court of Appeals:

> Before amendment in 1987, MCL 791.202(2); MSA 28.2272(2) stated:
>
> "The business which the [Michigan Corrections Commission] or the parole board may perform shall be conducted at a public meeting held in compliance with [the OMA]. Public notice of the time, date, and place of the meeting shall be given in the manner required by [the OMA]."
>
> In 1987, the Legislature amended MCL 791.202(2); MSA 28.2272(2), deleting its language concerning the Parole Board. 1987 PA 79. [226 Mich App 674.]

The Court of Appeals majority, however, found that the board was subject to the OMA because the Legislature did not amend the OMA, exempting the board when it amended MCL 791.202(2); MSA 28.2272(2).

Judge GAGE dissented, agreeing with the circuit court's conclusion that the Legislature manifested its intent to exempt the board from OMA requirements by amending MCL 791.202(2); MSA 28.2272(2).

We find ourselves in agreement with the circuit court and Judge GAGE. Under the Court of Appeals majority opinion, the Legislature's amendment of MCL 791.202(2); MSA 28.2272(2) to delete the parole board's obligation to comply with the OMA would be a nullity because the Legislature did not also at the same time amend the OMA. Such a construction violates the principle that statutes are to be construed in pari materia so as to give the fullest effect to each provision. *Parks v DAIIE*, 426 Mich 191, 199; 393 NW2d 833 (1986). Although it may have been preferable for the Legislature to have added the parole board to the OMA exemptions, its intent to excuse the board from the OMA was adequately expressed when it amended MCL 791.202(2); MSA 28.2272(2).

CONCLUSION

The Court of Appeals remand to the parole board for a more detailed explanation is affirmed. The Court of Appeals shall further consider Glover's appeal upon receipt of the explanation from the parole board. The Court of Appeals federal and state due process and OMA rulings are reversed.

Affirmed in part, reversed in part, and remanded.

WEAVER, C.J., and CAVANAGH, KELLY, and YOUNG, JJ., concurred with BRICKLEY, J.

TAYLOR, J. (*concurring*). I join the majority in affirming the remand to the parole board for a more

meaningful written explanation[1] and in reversing the Court of Appeals federal and state due process and Open Meetings Act holdings.

I agree with the result and reasoning of the majority opinion with the exception of its holding that Glover had a statutory right to a written explanation pursuant to MCL 791.235(12); MSA 28.2305(12). I do not find it necessary to reach this disputed issue, as I believe we should affirm the remand ordered by the Court of Appeals on the basis of MCL 791.234(8); MSA 28.2304(8),[2] and MCR 7.104(D)(7). This court rule provides:

> On timely motion by a party, or on the court's own motion, the court may remand the matter to the parole board for an explanation of its decision.

The Legislature has implicitly chosen in MCL 791.234(8); MSA 28.2304(8) to give a reviewing court the ability to request a written explanation should it deem further explanation necessary. Furthermore, MCR 7.104(D)(7), which echoes in part the legislation, provides a procedure for a reviewing court to invoke.

CORRIGAN, J., concurred with TAYLOR, J.

---

[1] I agree with the majority's explanation of why the explanation that was given by the parole board was inadequate. If the parole board had stated that it was denying parole because of Glover's unsatisfactory adjustment, bad attitude, and poor behavior, as evidenced by the twenty-nine misconducts, and because of compelling testimony of the victims and relatives of the victims who opposed parole, I would have found the explanation adequate.

[2] This statute provides that a prisoner's release on parole is discretionary with the parole board, but is also appealable to the circuit court.