*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Parole of MARK WILLIAM MILLER.

KENT COUNTY PROSECUTOR,

     Appellee,

UNPUBLISHED
October 12, 2023

v

MARK WILLIAM MILLER,

     Appellant,

and

PAROLE BOARD,

     Intervening Appellee.

No. 362875
Kent Circuit Court
LC No. 21-003935-AP

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Mark William Miller appeals as on leave granted[1] the circuit court's order reversing the Michigan Parole Board's decision to grant Miller parole. We reverse the circuit's order and reinstate Miller's parole, effective immediately.

## I. BACKGROUND AND PROCEDURAL HISTORY

## A. MILLER'S CRIMINAL HISTORY AND INCARCERATION

Miller, who has been incarcerated since 1994, has a long and disturbing history of domestic and sexual violence. Miller's violent history includes a 1987 conviction of fourth-degree criminal

---

[1] *In re Miller Parole*, ___ Mich ___; 987 NW2d 557 (2023).

sexual conduct (CSC-IV) that arose from a sexual assault perpetrated against DF, a former girlfriend and the mother of his son. Miller's parole arises from an attack against a subsequent girlfriend, JW. After their relationship ended, Miller engaged in stalking behavior directed toward JW, and she eventually obtained a personal protective order (PPO) against him; unfortunately, he was undeterred. After approaching JW at a bar, Miller went to JW's apartment, forced his way inside, threatened her with a kitchen knife, and sexually assaulted her. Following a jury trial, Miller was convicted of one count of first-degree criminal sexual conduct (CSC-I), one count of second-degree criminal sexual conduct (CSC-II), two counts of third-degree criminal sexual conduct (CSC-III), and one count of felonious assault. A separate jury found defendant guilty of aggravated stalking arising from conduct directed toward JW prior to the sexual assault.[2]

In September 1994, the trial court sentenced Miller to serve 25 to 75 years' imprisonment for the lead offense, CSC-I, and at his sentencing hearing, Miller began what would be an ongoing pattern of refusal to take responsibility for his actions. Miller maintained his innocence, accused JW of fabricating the assault, and even insinuated that she suffered from schizophrenia and had "a split personality." The court also noted that Miller had been calling JW from jail in an effort to "haunt" her. This behavior continued during his incarceration as Miller did everything possible, including use of the legal system, to harass JW from prison. This behavior led JW to obtain another PPO against him in 2015. Miller's refusal to accept responsibility for his crimes also continued, and he was at one point denied admission to a therapy program as a result.

## B. MILLER IS PAROLED FOR THE FIRST TIME

Whether Miller is to receive parole has been at issue since he first sought it in 2016.[3] The prosecutor opposed parole because Miller still had not accepted responsibility for his crimes and had even attempted to have charges brought against JW. At this point, Miller apparently began to accept some responsibility for his actions; however, he continued to make excuses, telling the conductor of a psychological evaluation that his actions were the result of his drinking and that JW had exaggerated her claims. Moreover, Miller made statements to an interviewer from the Parole Board that were inconsistent with what he told the psychologist. Therefore, despite baby steps toward accountability, parole was denied. The Parole Board continued to deny Miller throughout 2017 and 2018 because he had not completed the programs designed to mitigate his future risk and continued to justify or minimize his actions.

Miller's case was reevaluated in July 2019. By then, Miller appeared to have finally accepted responsibility for his acts of violence and admitted that he had used violence to control the women in his life. He expressed remorse for his conduct and purportedly understood why it was necessary to refrain from all contact with his victims. Additionally, Miller participated in therapy, and the Parole Board considered a report prepared by his therapist. Miller's participation in therapy was excellent, and he was described as "highly motivated and willing to change." The

---

[2] Miller appealed his convictions, and this Court affirmed. *People v Miller*, unpublished per curiam opinion of the Court of Appeals, issued June 21, 1996 (Docket No. 180696).

[3] Miller also moved the circuit court for early Parole Board jurisdiction in 2009, but this motion was denied.

therapist reported that Miller had "a positive support system" and showed improvement with establishing relationships with others as well as with controlling his impulsiveness. However, the report did seem to indicate some ongoing problems with fully accepting responsibility. For example, when describing the offense, defendant indicated that JW "gave in and had sex with" him and that he did not know anything was amiss until he was contacted by the police; this directly contradicts JW's testimony that she was assaulted at knife point. Further, the therapist reported that Miller was "able to admit to forcing sex on both of his victims," but Miller reported to the therapist that "it does not appear that was his intention initially." Finally, the parole-guidelines scoresheet for May 2019 showed that Miller had a score of +3, which placed him at high eligibility for parole. Ultimately, the Parole Board decided to grant Miller parole, with various conditions,[4] and entered a parole date of August 15, 2019.

The Kent County prosecutor's office promptly appealed the Parole Board's decision in the circuit court, and the circuit court reversed the Parole Board's decision in an order entered on February 3, 2020. The court reasoned that the Parole Board had not adequately complied with its duty to evaluate the evidence. Specifically, the court compared the previous denial of parole in 2018 with the grant of parole in 2019 and opined that the Parole Board failed to consider the severity of the original offense; failed to consider Miller's contacts with JW, which led her to get a personal protection order; and failed to list substance abuse despite notations in previous reports. The court also noted that there were serious concerns that Miller might be faking remorse, which the Parole Board did not consider. Finally, the court independently reviewed the evidence and opined that it did not show a meaningful change in circumstances between the two reviews, which amounted—in the court's view—to a "textbook case of abuse of discretion."[5]

## C. MILLER IS PAROLED FOR THE SECOND TIME

The Parole Board began considering Miller's case again late in 2020. A sexual offender risk assessment conducted in August 2020 concluded that Miller posed a moderate risk of reoffending. The author wrote that Miller had no clinically significant areas of concern, but he had areas of "some concern" regarding his capacity for relationship stability toward women, general social rejection, poor problem solving, and deviant sexual preference. Miller's parole-guidelines scoresheet for January 2021 again showed that Miller had a score of +3, which gave him a high probability of parole. In February 2021, the Parole Board again granted Miller parole, subject to similar conditions as before, and scheduled him for release on May 6, 2021.

---

[4] These conditions included sex offender registration, completion of an internet use agreement, completion of a sex offender treatment program, a bar on the use of "sexually oriented" phone services, a bar on patronizing establishments "where public nudity is a source of entertainment," and a bar on the possession of "sexually stimulating materials." Miller was also prohibited from the use or possession of alcoholic beverages and ordered to submit to electronic location monitoring.

[5] Miller's subsequent motion for relief from judgment was denied, as was his application for leave to appeal in this Court. *In re Miller Parole*, unpublished order of the Court of Appeals, entered January 21, 2021 (Docket No. 355366).

-3-

The Kent County Prosecutor's office again appealed in the circuit court. The prosecution argued that Miller did not begin to accept responsibility for his crimes until 2016; that his subsequent pleas of remorse have been inauthentic attempts to obtain parole; that Miller had still failed to admit to harassing both JW and his sister while incarcerated; and that nothing had changed since the 2019 reversal of the Parole Board's grant of parole. Finally, the prosecution was alarmed by what it perceived as the Parole Board's failure to make a record if its reasons for believing that releasing Miller would not endanger the public.

The Parole Board responded to and opposed the appeal. The Parole Board argued that it was not required to explain prior parole denials, that it was not required to incorporate specific facts into its decision, that a prisoner's failure to fully admit guilt does not mandate that parole be denied, and that there was adequate positive material in Miller's record to justify parole. The Parole Board outlined the following facts that it maintained supported its decision to grant parole:

> In making this determination the following items were referenced, that he was serving a crime requiring registration under the sex offender registration act; that he accepts responsibility for his crime; that he accepts his criminal history as indicated; that he expresses remorse; that his misconduct behavior has diminished; that he has satisfactory block reports; that he recognizes the value of good behavior; that as to psychological programming the reports show he has accepted responsibility, has met therapeutic goals, and has developed insight into his behavior; that he is a high school graduate or has a GED; that he has completed training and self-help programming; that he identifies gains from program involvement; that the prisoner has maintained family support and or [sic] support in the community; and that he identifies support in the community. Parole was also contingent upon completing the in-reach programming. [Alterations omitted.]

The Parole Board emphasized that it "is not required to write out opinion-like decisions when it grants or denies parole" and it also emphasized the various stringent conditions attached to Miller's parole.

In October 2021, the circuit court entered an order again reversing the Parole Board's decision to grant parole. However, this time the court's decision was based on the Parole Board's perceived failure "to address what was clearly set forth in" the February 2020 order reversing the previous grant of parole.

> What about the victim's statements regarding the need for a [PPO] after his conviction? What about harassing contact Miller allegedly had with his sister? If the Parole Board is going to believe Miller over the other sources, that is fine; but to simply ignore these aspects without mention is an abuse of discretion . . . .

The circuit court explained that the Parole Board's decision "simply does not provide this Court with enough information for meaningful judicial review."

## D. THIS COURT ORDERS RECONSIDERATION

Miller filed an application for leave to appeal in this Court, and in lieu of granting this application, this Court vacated the trial court's order. *In re Miller Parole*, unpublished order of the Court of Appeals, entered February 24, 2022 (Docket No. 359565). As this Court explained:

> The trial court concluded that the parole board's decision contained inadequate information to enable meaningful appellate review, and the appropriate action in these circumstances was to remand the matter, under MCR 7.118(H)(4), to the parole board for an additional explanation of its decision. However, the circuit court appeal should have remained pending while the parole board's additional review was ongoing, see MCR 7.118(H)(4)(a) and (b), and the trial court thus erred by reversing the parole board's decision and remanding to the parole board for additional proceedings without retaining jurisdiction. On remand, consistent with MCR 7.118(H)(3) and (4), the trial court shall review the parole board's decision on the merits, including a review of any additional explanation offered by the parole board on remand from the circuit court. [*Id.*]

The Parole Board had already provided the circuit court a response the previous November, and the court considered this on remand. The Parole Board addressed seven concerns that had been raised by the court. Regarding unwanted contact with JW, the Parole Board stated that there was no evidence that Miller had violated the PPO issued in 2015. Regarding harassing contact with his sister, the Parole Board stated that it had "amended the Order for Parole to include a special condition of parole prohibiting Mark Miller from contacting" his sister. The Parole Board stated that it had reviewed and considered the severity of the circumstances surrounding the offense as well as Miller's 1987 CSC-III conviction. Regarding Miller's refusal to admit guilt, including his 2014 appeal to the Innocence Project, the Parole Board stated that "[d]enial of commission of a sex offense is often used as a protective factor based on fear, guilt, shame, humiliation, and other factors unrelated to risk." Additionally, Miller had participated in therapy "and had taken steps to open up." Regarding Miller's history of substance abuse, the Parole Board stated that "Miller engaged in no substance abuse misconduct during incarceration" and that Miller's therapy enabled him to gain "a great deal of insight into his patterns of alcohol abuse, triggers and risk for relapse, and the presence of a robust plan to remain sober." Regarding the psychological evaluation in which Miller continued to minimize his criminal behavior and concerns that he was faking remorse, the Parole Board stated that "Miller gained understanding related to" the causes of his criminality during sex offender therapy that he completed in 2018.

The circuit court was not satisfied, describing the Parole Board's decision as "a clear abuse of discretion." The court opined that "[a]ny reasonable person would find a lack of assurance that Miller will not become a menace to society or the public safety, and any reasonable person would find substantial and compelling reasons to deny parole."

> In this case, Miller has continually refused to accept responsibility for his actions; argued against a PPO that was issued while the defendant was incarcerated; has a history of abusive and misogynistic conduct towards women and refuses to change his behavior; and has continued to manipulate and blame his victims for what occurred. Rather than respond to the concerns raised about whether Miller can be safely released into society, the Parole Board simply acknowledged Miller's

past behavior with no explanation why it believed Miller was no longer a threat to society.

The court described Miller's "refusal to take responsibility for his," "continual victim blaming," history of misogyny, and lack of remorse as "a dangerous combination."

> The Court finds that the Parole Board has failed to determine whether parole is in the best interests of society and public safety, considering Miller's past and current criminal behavior, his readiness for release, and his personal history and growth. The Parole Board again has given no justification for its decision, despite this Court's repeated requests that the Parole Board do so, making this Court's review impossible. It has failed to address this Court's concerns . . . . As a result, the Court finds that the Parole Board abused its discretion when it recommended Miller for release without any meaningful consideration into the justification for his release, and this Court has legitimate concerns about whether the defendant can be safely released.

For those reasons, Miller was once again denied parole.

This appeal followed.

## II. DISCUSSION

The circuit court erred by substituting its judgment for that of the Parole Board and exceeded its authority by imposing obligations upon the Parole Board not spelled out by the relevant statutes and court rules.

## A. STANDARDS OF REVIEW

The Parole Board's decision to grant parole can only be reversed if the appellant establishes that the Parole Board's decision was "in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation that is exempted from promulgation" or that the decision was "a clear abuse of discretion." MCR 7.118(H)(3).

This Court reviews de novo a circuit court's decision to reverse the Parole Board's grant of parole because the circuit court's decision involves the proper interpretation and application of statutes, court rules, and administrative guidelines. *In re Johnson Parole*, 235 Mich App 21, 22-23; 596 NW2d 202 (1999); see also *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018) ("The interpretation and application of statutes present questions of law that are . . . reviewed de novo."). We defer to the judgment of the Parole Board, not the circuit court. *In re Wilkins Parole*, 506 Mich 937; 949 NW2d 458 (2020). "Importantly, a reviewing court may not substitute its judgment for that of the Board." *In re Elias Parole*, 294 Mich App 507, 538-539; 811 NW2d 541 (2011).

## B. RELEVANT LAW GOVERNING PAROLE

In general, "a prisoner sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years . . . is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence . . . ." MCL 791.234(1). Parole cannot be granted "until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." MCL 791.233(1)(a). "This requirement is addressed both by a proper application of the parole guidelines and by accounting for any substantial and compelling reasons for departure from the guidelines." *In re McBrayer Parole*, ___ Mich ___, ___ n 22; ___ NW2d ___ (2023) (Docket No. 164311); slip op at 7.

"Statutorily mandated parole guidelines form the backbone of the parole-decision process." *Elias*, 294 Mich App at 512. "The parole guidelines are an attempt to quantify the applicable factors that should be considered in a parole decision." *In re Johnson Parole*, 219 Mich App 595, 599; 556 NW2d 899 (1996).

> The parole guidelines set out factors—such as criminal history, type of offense, conduct in prison, mental health, and age—for determining whether a prisoner merits parole. Parole-eligible prisoners receive scores under these factors. A prisoner's score places him or her into one of three categories: high probability of parole, average probability of parole, or low probability of parole. Usually, the Parole Board must grant parole to a prisoner with a "high probability" parole-guidelines score. [*McBrayer*, ___ Mich at ___; slip op at 7 (footnotes omitted).]

It is undisputed that Miller's score classified him as high probability of parole.

"The parole board may depart from the parole guidelines by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines." MCL 791.233e(6). However, a departure must be justified by "substantial and compelling objective reasons stated in writing." *McBrayer*, ___ Mich at ___; slip op at 6 (quotation marks and citation omitted).[6]

The Michigan Supreme recently issued an opinion in which it extensively detailed how the Parole Board's decision should be reviewed when it grants parole to a prisoner whose guidelines score resulted in placement in the "high probability" category. *McBrayer*, ___ Mich at ___; slip op at 7-10. The Court explained that "even if there are substantial and compelling reasons to deny parole, a grant of parole is not an automatic abuse of discretion." *Id.* at 7.

> The proper analysis has two parts. First, . . . a reviewing court must consider whether there are substantial and compelling reasons to deny parole to a prisoner

___

[6] MCL 791.233e(7) provides "an exhaustive list" of reasons that can justify departure, but this was added in 2018 and applies "only to prisoners whose controlling offense was committed on or after the December 12, 2018." *McBrayer*, ___ Mich at ___ n 23; slip op at 8. Therefore, it is inapplicable here.

with a high-probability guidelines score. If not, then no departure is warranted. But if substantial and compelling reasons exist and the Parole Board nonetheless granted parole, the second question is whether the choice not to depart constituted a clear abuse of discretion. Consistently with the default definition of that standard, the Parole Board abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. [*Id*. at 9-10 (footnotes omitted).]

The statutory scheme "entitles the Parole Board to great deference . . . ." *Id*. at 10. The Supreme Court also explained the rationale behind affording such deference:

[T]he Legislature assigned to the Parole Board, and not to the judicial branch, the authority to choose among reasonable and principled outcomes. The Legislature has created a criminal justice system in which offenses are typically punished by indeterminate sentences, represented by ranges of months or years. Within this system, courts have significant discretion over sentencing, including setting the minimum and maximum sentences. After a prisoner has been sentenced and any appeals have been exhausted, however, the courts' primary role in determining the length of a prisoner's sentence has ended. Instead, the Legislature has tasked the Parole Board with determining whether and when prisoners will be released on parole. Although courts may, in some instances, review the Parole Board's decisions and ensure compliance with the law, the judicial branch must nonetheless respect the Legislature's choice to give discretion over whether to grant parole to the Parole Board. [*Id*. at 12 (footnotes omitted).]

Michigan caselaw has established additional guidelines for appellate review of the Parole Board. For example, it is not an abuse of discretion for the Parole Board to make a decision that "conflicted with the decisions of previous Parole Board panels" because "[e]ach panel member has the discretion to consider the evidence and make a reasonable choice regarding which version of the evidence to believe." *In re Haeger Parole*, 294 Mich App 549, 579; 813 NW2d 313 (2011). Additionally, the Parole Board does not need "to specifically cite the documents it reviewed in rendering its decision" because the Parole Board is presumed to have read and considered everything that is part of the record. *Elias*, 294 Mich App at 547. However, the Parole Board must provide sufficient detail to facilitate "meaningful appellate review." *Glover v Mich Parole Bd*, 460 Mich 511, 519; 596 NW2d 598 (1999). When the record is "not one-sided," the Parole Board must "provide greater explanation for its decision." *Id*. at 525-526. Finally, it is not permissible for a reviewing court to impose its own standards for granting or denying parole that are not set forth by the relevant statutes and court rules. *In re Spears Parole*, 325 Mich app 54, 63-64; 922 NW2d 688 (2018).

## C. APPLICATION

The first step of our analysis is whether there were substantial and compelling reasons to depart from the parole guidelines, *McBrayer*, ___ Mich at ___; slip op at 9-10, and we conclude that there are substantial and compelling reasons. In particular, Miller has stubbornly refused to accept responsibility for his crimes and has engaged in conduct aimed at harassing JW. Indeed, Miller maintained his innocence for decades, and he even went so far as to elicit the assistance of the Innocence Project. Miller has made progress in this regard, and in recent years he has been

willing to admit wrongdoing; however, he continues to minimize the offense and still has not taken full responsibility. A prisoner is not required to admit guilt in order to be granted parole, but legitimate concern for JW's safety arises when his refusal to accept responsibility is viewed in conjunction with the fact that Miller harassed her from prison to the point that she obtained a PPO against him *more than twenty years* after he was incarcerated. We cannot disagree with the circuit court's characterization of Miller's refusal to take responsibility, ongoing victim blaming, and history of harassment as "a dangerous combination."

The circuit erred, however, by overlooking the fact that "the Parole Board supported its decision with a significant amount of relevant evidence favorable to [Miller]'s case for parole" *McBrayer*, ___ Mich at ___; slip op at 11. Miller has been imprisoned for nearly 30 years. Several years have passed since Miller last engaged in harassing conduct toward JW or his sister, and there is no evidence that Miller has ever violated the PPO that was issued in 2015. Moreover, there is likewise no evidence that Miller has threatened or expressed intent to harm JW. While Miller has not fully admitted guilt, he has made strides in recent years toward accepting accountability, he has expressed remorse, and he has admitted through his therapy work that he has used violence as a means for controlling the women in his life. Miller's therapist described him as "highly motivated and willing to change," and Miller has a support network in place to assist him when he is released. Additionally, Miller was highly engaged with programing while imprisoned, must register as a sex offender upon release, and will be subject to electronic monitoring. Finally, while alcohol by no means caused Miller to commit his crimes, it is noteworthy that there is no evidence that he has used any illicit substances while incarcerated, and he has participated in therapy that equipped him with the tools for remaining sober. We sympathize with the circuit court's concerns for the safety of Miller's victims, but we do not agree with its conclusion that departure from the parole guidelines is the only principled outcome in this case.

The circuit court's decision was based largely on its conclusion that the Parole Board failed to adequately justify its decision. It is true that Parole Board needs to provide sufficient detail to facilitate "meaningful appellate review," *Glover*, 460 Mich at 519, but the circuit court's statements that the Parole Board gave "no justification for its decision," gave "no explanation why it believed Miller was no longer a threat to society," and "recommended Miller for release without any meaningful consideration into the justification for his release" are not consistent with the record. Between its initial order granting parole, its brief in opposition to the prosecution's appeal, and its response to the circuit court's October 2021 opinion and order, we conclude that the Parole Board provided a thorough and detailed rationale for its decision to grant Miller parole. The Parole Board explained, among other factors, that Miller expressed remorse, would be required to register as a sex offender, had a high school level education, had participated in various programs during prison, had community support, gained insight into his criminality through therapeutic programming, had stringent conditions attached to his parole that included electronic monitoring and no-contact orders, and had never violated the PPO issued with respect to JW.

Moreover, the circuit court's specific contention that the Parole Board failed to address the concerns raised by the circuit court in its previous opinions and order is also inconsistent with the record. Indeed, the Parole Board provided a detailed response to the circuit court's October 2021 opinion and order. The Parole Board addressed the circuit's concerns regarding Miller's harassing behavior by noting that Miller had never violated JW's PPO and that conditions of his parole would bar any contact with JW or his sister. Regarding Miller's continued failure to take complete

responsibility for his crime, the Parole Board explained that this was likely a psychological defense mechanism against feelings of guilt, shame, and humiliation that did not necessarily have any bearing on his risk of reoffending. To the extent that the Parole Board did not fully respond to every question raised by the circuit court, it was not obligated to do so; it was required only to provide enough information to facilitate meaningful appellate review, *Glover*, 460 Mich at 519, and we conclude that it did. We are cautious to avoid imposing requirements for the grant of parole that are not present in the relevant statutes and court rules. See *Spears*, 325 Mich app at 63-64.

We recognize the heinous nature of Miller's crimes and how frightening it must be for JW that Miller is going to be released from prison. This opinion should in no way suggest that we agree with the Parole Board or would have granted parole had we sat in its place. However, the courts do not get to decide when the recipient of an indeterminate sentence is to be released from prison; that decision belongs to the Parole Board, and the Supreme Court has made it clear that we owe the Parole Board significant deference. The Parole Board is convinced that Miller can be constructively reintegrated into society and that JW can be kept safe. Because this decision cannot fairly be described as a clear abuse of discretion, the circuit court erred by reversing it.

### III. CONCLUSION

The circuit court's order reversing the Parole Board's decision to grant Miller parole is reversed. The Parole Board's decision to grant Miller parole is reinstated. This opinion shall have immediate effect pursuant to MCR 7.215(F)(2). We do not retain jurisdiction.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

-10-