*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Parole of KENNETH DONALD SIDERS.

---

NEWAYGO COUNTY PROSECUTOR,

      Appellee,

v

KENNETH DONALD SIDERS,

      Appellant.

UNPUBLISHED
January 4, 2024

No. 360415
Newaygo Circuit Court
LC No. 2019-020563-AP

---

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

## ON REMAND

In lieu of granting leave to appeal, our Supreme Court vacated the judgment of this Court and remanded this case for reconsideration in light of its recent decision in *In re McBrayer Parole*, 511 Mich 403; ___ NW2d ___ (2023).[1] We incorporate by reference the facts stated in our previous opinion.[2]

## ANALYSIS

In *In re McBrayer Parole*, our Supreme Court clarified the proper standard for reviewing a circuit court's review of a decision by the Parole Board:

> When the Parole Board grants parole to a prisoner, the prosecutor of the county from which the prisoner was committed or the victim of the crime for which

---

[1] *In re Parole of Siders*, ___ Mich ___; 995 NW22d 332 (2023).

[2] *In re Parole of Siders*, unpublished per curiam opinion of the Court of Appeals issued October 27, 2022 (Docket No. 360415).

-1-

the prisoner was convicted may appeal the board's decision.  The appeal must be to the circuit court in the county from which the prisoner was committed, by leave of the court.  An appellant has the burden to prove that the Parole Board's decision was a clear abuse of discretion or that the decision violated the Michigan Constitution, a statute, an administrative rule, or a written agency regulation . . . .  If a party then appeals the circuit court's decision in the Court of Appeals, the standard of review remains the same abuse-of-discretion standard.  It is the judgment of the Parole Board, not the circuit court, that is entitled to deference in this appeal from the decision of an administrative agency.  In short, a reviewing court may not substitute its judgment for that of the Parole Board.  [*In re McBrayer Parole*, 511 Mich at 412 (quotation marks and citations omitted; alteration in original).]

The Legislature established the Parole Board to make individual decisions whether to parole a prisoner committed to the custody of the Department of Corrections.  See MCL 791.231a(5).  Under the statutory scheme, the Parole Board oversees the granting, rescission, and revocation of parole.  See *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003).  Matters of parole lie solely within the Parole Board's broad discretion.  *Id*.  Nevertheless, the Legislature limited the Parole Board's authority: it must not grant parole to a prisoner "until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety."  MCL 791.233(1)(a).

The parole process involves application of the parole guidelines.  See *In re Elias Parole*, 294 Mich App 507, 512; 811 NW2d 541 (2011).  The "parole guidelines set out factors—such as criminal history, type of offense, conduct in prison, mental health, and age—for determining whether a prisoner merits parole.  Parole-eligible prisoners receive scores under these factors." *In re McBrayer Parole*, 511 Mich at 413.  The guidelines attempt to quantify the factors that should be used in determining whether to parole; they were intended to inject objectivity and uniformity, which would minimize recidivism and decisions premised on improper considerations such as race. *In re Elias Parole*, 294 Mich App at 512.  Normally, the Parole Board must grant parole to a prisoner who has a "high probability" score under the guidelines. *In re McBrayer Parole*, 511 Mich at 413.  The Legislature authorized the Parole Board to deny parole to a prisoner with a high probability of parole under the guidelines, if the Parole Board states in writing a substantial and compelling reason to do so.  See former MCL 791.233e(6).[3]  Although the Parole Board has the discretion to depart from the requirement that it parole the prisoner when there is a substantial and compelling reason, it is not required to do so. *In re McBrayer Parole*, 511 Mich at 414-415.  For that reason, the "mere existence of substantial and compelling reasons for departure is not sufficient for a reviewing court to conclude that the Parole Board abused its discretion by choosing

---

[3] The Legislature amended this subsection effective December 2018, see 2018 PA 339, but because Siders committed the offenses at issue before the effective date of that amendment, the amended version did not apply to him.  See *In re McBrayer Parole*, 511 Mich at 414 n 23, citing MCL 791.233e(14), as amended by 2022 PA 28.

not to depart from the guidelines." *Id*. at 415. Our Supreme Court held that the proper analysis under those circumstances involves a two-stage review:

> First, . . . a reviewing court must consider whether there are substantial and compelling reasons to deny parole to a prisoner with a high-probability guidelines score. If not, then no departure is warranted. But if substantial and compelling reasons exist and the Parole Board nonetheless granted parole, the second question is whether the choice not to depart constituted a clear abuse of discretion. Consistently with the default definition of that standard, the Parole Board abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. [*Id*. at 415-416.]

This standard of review requires great deference to the Parole Board's decision, and a reviewing court must be careful not to substitute its own judgment for that of the board. *Id*. at 416. There may be circumstances in which the reasons for departure are so significant that the failure to depart would amount to an abuse of discretion; "[b]ut when it would be a reasonable and principled outcome not to depart from the guidelines, the Parole Board does not abuse its discretion by declining to do so." *Id*. at 417.

When issuing its decision, the Parole Board must provide a sufficient explanation for its decision to allow meaningful appellate review. See *Glover v Parole Bd*, 460 Mich 511, 519; 596 NW2d 598 (1999). The Parole Board does not, however, have to "provide extensive findings of fact and conclusions of law." *Id*. at 525. The Parole Board satisfies its duty when it indicates what it relied on in reaching its decision to parole. *Id*. When a record has evidence both in support of a proposition and in opposition to a proposition, the Parole Board may need to provide additional information. *Id*. at 525-526.

Previously, in upholding the circuit court's decision, we considered evidence in the record that supported the circuit court's decision to reverse and concluded that the circuit court did not err despite its independent evaluation of the weight and credibility of that evidence. *In re Siders Parole*, unpub op at 8. The circuit court's analysis, however, does not comport with our Supreme Court's holding that the circuit court—and this Court—must give great deference to the Parole Board's decision. See *In re McBrayer Parole*, 511 Mich at 416. The Parole Board, and not the circuit court or this Court, must assess the weight and credibility of the evidence. As this Court has explained,

> [e]ach and every parole panel faces some conflicting information in making its decision. Each panel member has the discretion to consider the evidence and make a reasonable choice regarding which version of the evidence to believe. It is not an abuse of discretion for two fact-finders to reach different conclusions from the complex and potentially conflicting information within a prisoner's record. [*In re Haeger Parole*, 294 Mich App 549, 579; 813 NW2d 313 (2011).]

The statutory scheme does not require the Parole Board to determine that a prisoner has significantly changed since the last parole decision before it can grant parole. See, e.g., *In re Spears Parole*, 325 Mich App 54, 63-64; 922 NW2d 688 (2018) (criticizing the circuit court for

creating a standard that was not supported by the statute or caselaw). The law gives the Parole Board the authority to act—or refrain from acting—based on the record evidence, and nothing in the law requires it to defer to a past decision; rather, the sole question is whether the Parole Board's decision fell within the range of reasonable and principled outcomes. See *In re McBrayer Parole*, 511 Mich at 418-419.

In our previous opinion, we analyzed the record and focused on the nature of the evidence and the conflict between the circuit court's assessment of that evidence and the Parole Board's analysis of the same evidence and decision. We considered the circuit court's analysis superior to that of the Parole Board. The decision in *In re McBrayer Parole*, 511 Mich at 416, clarifies that our review requires independent evaluation to determine whether evidence in the record supported the Parole Board's exercise of discretion, not whether it supported the circuit court's decision.

In this case, record evidence established that substantial and compelling reasons exist not to parole Siders. The record, however, also contains evidence from which a reasonable panel of the Parole Board could conclude that parole is appropriate. The record demonstrated that Siders posed no management problem for the correctional officers and behaved appropriately with staff and peers over the past several years. He had not had any misconducts in prison for more than nine years, and the last major misconduct was for having a tobacco product. He had no sexual misconducts. The author of the Qualified Mental Health Professional Evaluation (QMHP) reported that he interviewed Siders for more than five hours over three days. The author wrote that Siders "took responsibility for his behavior and expressed deep sorrow and shame." Siders also openly acknowledged that he had minimized the specific details as a result of shame and guilt. The author stated that Siders reluctantly disclosed his own history as a victim of sexual abuse because that history was not an excuse for his past criminal behavior. The author wrote that Siders was tearful and characterized the period when he committed the offenses as a nightmare. The author informed the Parole Board that he had no current concerns that Siders emotionally identified with children, that Siders had hostility toward women, that Siders was callous toward others, or that Siders was impulsive.

The author did identify areas in which there were some concerns, such as Siders's loneliness, his avoidant thinking style, and his tendency to avoid conflict which prevented him from processing things in a healthy or productive manner. The author also had some concerns with Siders's sex drive, use of sex for coping, and significant concern with Siders's deviant sexual interests. In particular, the author was concerned by Siders's statements contesting key information in the Presentence Investigation Report. Although the author identified areas of concern for Siders, the author concluded that Siders had made significant progress, including that he understood the "impact of his crimes and the irreversible damage he has done." Siders also had a realistic view of the future of his relationship with his family and intended to respect their distance. Siders lacked the ability to fully discuss the details of the offense at issue, but he was not interested in trying to justify his behavior. Nevertheless, Siders had "poor" insight into the root cause of his behaviors. The author concluded that, overall, Siders was in the "[l]ow priority category for supervision and intervention" by comparison with other sex offenders.

The QMHP was equivocal; portions of the report supported the conclusion that Siders no longer posed a significant danger to the general public, but other parts permitted an inference that he had not yet been able to fully reconcile what he had done in a way that ensured that he would

not engage in such behaviors again. The Parole Board held a public hearing at which it cross-examined Siders about his history and the statements made by the author of the QMHP. The Parole Board had the opportunity to view Siders's demeanor and evaluate his credibility at the hearing. Accordingly, the Parole Board was in a better position to evaluate the weight of the QMHP in light of Siders's testimony under cross-examination. Examined in that light, the QMHP, at least arguably, tends to support the Parole Board's decision that Siders could be safely paroled. Additionally, the circuit court and this Court did not evaluate the decision in light of the Parole Board's inclusion of conditions on Siders's parole. Those conditions should mitigate the risk that Siders will become a menace.

The Parole Board's plan prohibited Siders from having any verbal, written, electronic, or physical contact with a person 17 years of age or younger. It prohibited him from living with, or caring for, a person 17 years of age or younger. It also placed limits on his Internet access, on his ability to have relationships, on his ability to use sexually stimulating materials, and on his use of alcohol or drugs. The Parole Board required him to obey all court orders and to complete substance-abuse and sex-offender treatment—not if referred to such treatment—but "when referred by the field agent." He was also required to submit to monitoring by a global positioning system. The Parole Board could rely on its restrictions when weighing whether to grant parole. See *In re McBrayer Parole*, 511 Mich at 417-418 (noting that the parole plan included GPS monitoring and geographic restrictions to protect the public, which were properly considered in support of the decision to parole).

Although reasonable people can disagree respecting the evidence in this case, the Parole Board had authority and discretion to make the decision to parole Siders, and the circuit court should have deferred to the Parole Board's assessment of the risk and suitability of parole under the totality of the circumstances. Indeed, *In re McBrayer Parole*'s analysis applies equally to this case:

> There can be reasonable disagreement with the Parole Board's decision to parole . . . ; the Court of Appeals majority opinion shows as much. But the Legislature assigned to the Parole Board, and not to the judicial branch, the authority to choose among reasonable and principled outcomes. The Legislature has created a criminal justice system in which offenses are typically punished by indeterminate sentences, represented by ranges of months or years. Within this system, courts have significant discretion over sentencing, including setting the minimum and maximum sentences. After a prisoner has been sentenced and any appeals have been exhausted, however, the courts' primary role in determining the length of a prisoner's sentence has ended. Instead, the Legislature has tasked the Parole Board with determining whether and when prisoners will be released on parole. Although courts may, in some instances, review the Parole Board's decisions and ensure compliance with the law, the judicial branch must nonetheless respect the Legislature's choice to give discretion over whether to grant parole to the Parole Board.

> Given the considerations favoring parole in this case, even when compared with those weighing against, we conclude that it was within the range of reasonable and principled outcomes for the board not to depart from the parole-guidelines

recommendation to parole . . . . This is not a matter of deciding the best course as we would choose it. It is a matter of deferring to the Parole Board, the entity chosen by the Legislature to make parole determinations, when it reaches a conclusion within the bounds of law. Ultimately, we conclude that the board did not abuse its discretion . . . . [*In re McBrayer Parole*, 511 Mich at 418-419.]

In this case, evidence in Siders's parole file both supported a grant of parole and supported a finding that substantial and compelling reasons to depart existed. Given the totality of the evidence, the Parole Board had the discretion to resolve the issues in favor of parole. See *In re Haeger Parole*, 294 Mich App at 579 (stating that the Parole Board properly exercises its discretion when it makes a reasonable and principled decision resolving a conflict in the evidence). Consequently, we conclude that the Parole Board did not abuse its discretion when it granted Siders parole, see *In re McBrayer Parole*, 511 Mich at 418-419, and that the circuit court erred when it substituted its judgment for that of the Parole Board, see *In re Elias Parole*, 294 Mich App at 547-548.

For these reasons, we reverse the circuit court's decision and remand the case to the circuit court to affirm the Parole Board's ruling. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford